## THE STATE v. VAN WINKLE.

1. **Larceny of Cattle:** EVIDENCE. On a trial for the larceny of cattle, where there was testimony tending to show that defendant, a single man, made his home at his father's house, it was proper to allow the owner of the cattle to testify that he found them at defendant's father's,—such testimony being competent to show not only that defendant had possession of the cattle, but also as bearing on the question whether they had strayed or were stolen.

2. ——: INSTRUCTION. In such case an instruction that, even if the cattle were found at defendant's father's, and that was defendant's home, this would not put them in defendant's possession unless he exercised control over them under a claim of right, was not prejudicial to defendant.

3. ——: EVIDENCE. In such case the owner of the stolen cattle testified that he had two other cows taken at the same time, which he found soon afterwards at a neighbor's; and another neighbor testified to seeing these cows at his place the next morning after he had seen defendant pass in the evening. *Held* that this testimony was competent to show that the cattle had not strayed, but were stolen.

4. ——: BADGES OF GUILT: INSTRUCTION. In such case, where the evidence tended to show that defendant left the state on the day the officers were searching for the cattle, and after the arrest of his co-defendant, and that he left on a false pretense, and when arrested he denied his name to the officer, *held* that there was sufficient evidence to warrant the instruction that, if shortly after the commission of the crime charged defendant fled from the state to avoid arrest, or, when arrested, he denied his name and identity for the purpose of evading justice, such facts were, unless properly explained, *prima-facie* indications of guilt.

5. Criminal Evidence: IMPEACHMENT. It is competent, for the purpose of impeaching defendant's witnesses, to call the justice of the peace before whom the preliminary examination was held, and others who were then present, to testify as to what such witnesses stated at such examination.

6. ——: SELF-CRIMINATION OF CO-DEFENDANT: PERSONAL RIGHT: WAIVER. Where one jointly indicted with defendant testified before the grand jury to what he knew about the alleged crime, *held* that he could not, upon the trial of the indictment, refuse to testify, on the ground that he might thereby criminate himself. Also, *held* that, even though he was wrongfully compelled to testify, the defendant could not complain thereof, as the privilege was personal to the witness.

7. ——: ALIBI: BURDEN OF PROOF: INSTRUCTION. Where defendant relied upon an *alibi* the court instructed as follows: "The burden of proof is on the state to establish beyond a reasonable doubt that the larceny charged was in fact committed. But if the state has made this proof, then the burden of proof is on the defendant to establish by the weight or preponderance of the evidence his defense of *alibi*. But if the entire evidence upon the whole case raises a reasonable doubt as to defendant's guilt, then you should acquit him." *Held* that the instruction, when taken together, properly placed upon the state the burden of proving defendant's guilt.

8. ——: CORROBORATION OF ACCOMPLICE: QUESTIONS FOR COURT AND JURY. Under Code, section 4559, providing that a defendant shall not be convicted upon the evidence of an accomplice unless it is corroborated by "such other evidence as shall tend to connect defendant with the commission of the offense," the question whether there is such corroborating evidence to go to the jury is one for the court, but it is for the jury to determine its weight; and in this case *held* that there was evidence of that kind (see opinion) proper to be submitted to the jury, and that it was sufficient to justify a verdict of guilty.

*Appeal from Van Buren District Court.*—HON. H. C. TRAVERSE, Judge.

FILED, MAY 10, 1890.

THE defendant was jointly indicted with one Henry Vance for the crime of larceny alleged to have been committed on the sixteenth day of May, 1887; the property stolen being one two-year-old heifer of the value of twenty dollars, and one one-year-old heifer valued at twelve dollars, the property of N. Ruby. A change of venue was granted to the defendant Vance, and, this defendant having pleaded not guilty, the case was tried to a jury, and a verdict returned finding him "guilty of the crime of larceny as charged," and the value of the property stolen to have been thirty-two dollars. Defendant's motion for a new trial being overruled, judgment was entered on the verdict, to all of which defendant excepted, and from which he appeals.

*Wherry & Walker*, for appellant.

*John Y. Stone*, Attorney General, for the State.

GIVEN, J.—I. We first notice defendant's exceptions to testimony, and to the giving and refusing certain instructions in connection therewith.

N. Ruby was permitted to testify that he found the cattle described at defendant's father's. Defendant contends that this was immaterial, as the state failed to show that he made his home there, or had anything to do with the place or the cattle, and in this connection complains of the

1. LARCENY of cattle: evidence.

sixth paragraph of the court's charge. There was testimony tending to show that defendant made his home at his father's. He was a single man, and, so far as appears, had no other home. He always came there to stay when not at work elsewhere, and when there worked on the farm. In his testimony he speaks of the place as "our house." The presumption of guilt that arises from recent unexplained possession of the stolen property does not attach until the possession is shown. Whether the accused had possession was a question for the jury. This testimony was not only competent as tending to show that the defendant had possession of the cattle, but also as bearing on the question whether the cattle had strayed or were stolen.

The part of the instruction complained of is as follows: "If the animals in question were found on the farm of defendant's father a short time after they were stolen, if they were, and even if that was defendant's home, still this would not necessarily put said animals in possession of defendant, unless you find that he exercised control over the same under a claim in himself." This instruction was certainly as favorable to defendant as he could ask.

2. ——: instruction.

Mr. Ruby was also permitted to testify that he had two other cows taken at the same time, which he found soon after at Mr. Wilmonth's. Mr. Pope testified to seeing those two cows at his place the next morning after he had seen Vance and the defendant pass in the evening. This testimony of Ruby was competent as tending to show that the cattle had not strayed, but were stolen.

3. ——: evidence.

II. Robert Graves was permitted to testify that a warrant was placed in his hands for the arrest of the defendant, and that he searched for defendant, and could not find him. Sheriff Wilkin was permitted to testify that he found defendant in Dakota, at his brother's. That defendant was brought to St. Paul by an officer, where he received him. That the first thing he said to defendant was:

4. ——: badges of guilt: instruction.

"This is Bill Van Winkle?" He said: "No, sir; you are mistaken in the man." That coming down from St. Paul the defendant did not acknowledge his identity, would not say anything,—but when brought into the court room acknowledged his name to be William Van Winkle. The court instructed the jury: "If from the evidence you find that the defendant, shortly after the commission of the crime charged, fled from the state to avoid arrest, or if you find that when he was arrested he denied his name and identity for the purpose of evading justice, then such facts are circumstances which *prima facie* are indications of guilt, unless properly explained." Appellant complains of this instruction, contending that there was no proof that the defendant had been charged with the crime before leaving the state, or at the time he said, "You have made a mistake in the man." There was evidence tending to show that the defendant left on the day the officers were searching for the cattle, and after the arrest of his co-defendant. He claimed to have gone in pursuance of a letter of April 3 from his brother, and yet he did not go until about June 14, the time of the occurrence just complained of. We think there was evidence from which the jury might infer that the defendant knew that he was or would be charged with this crime when he left, and at the time the sheriff received him in St. Paul. This was sufficient to entitle the testimony to go to the jury, under the instruction given.

III. The defendant examined Albert, John and Guy Van Winkle, who had testified on the preliminary examination before Esquire ALTON. The state, having laid the proper foundation, called Esquire ALTON and others as to certain statements made by defendant's witnesses on their former examination. Defendant's argument is as to whether there was any conflict in the statements of his witnesses, rather than the competency of the testimony. The testimony was clearly competent. It was for the jury to say what conflict there was, and the effect it

5. CRIMINAL evidence: impeachment.

should have upon the testimony of defendant's witnesses. The state introduced testimony tending to impeach the character of some of defendant's witnesses. This was clearly competent. What is said as to the weight it was entitled to was proper for the consideration of the jury, but does not go to its admissibility.

IV. Harry Vance, jointly indicted with the defendant, was called as a witness on behalf of the state. The record shows that, after answering that he was acquainted with the defendant, he was asked if on May last he was with defendant at their house. The witness then stated: "I want to claim my privilege, and decline to answer any question that would tend to criminate myself." The court announced: "The witness is not bound to testify to anything that would criminate himself;" whereupon the witness retired. Without any further proceedings intervening, the witness was recalled; whereupon defendant's attorneys objected to his testifying, because he had claimed his privilege. The court held that the privilege was personal to the witness; that the defendant could not claim it in his favor; that it appeared from the records of the court that the witness testified before the grand jury in this case, and there disclosed what he claimed to know about it, without claiming his privilege; therefore he ought not to be permitted to claim it here. These rulings are fully supported by the authorities. It has been held in some states that, when a witness gives testimony to a part of a transaction without claiming his privilege, he may be compelled to state the whole, and to submit to a full cross-examination, notwithstanding his answers tend to criminate or disgrace him. *Com. v. Pratt*, 126 Mass. 462. The reason for this ruling applies with greater force to a case like this. The only reason for excluding this testimony is that the witness claimed his privilege. Had he waived his privilege, and testified, the defendant had no grounds for objecting. If his privilege was denied him wrongfully, the wrong was to the witness,

*Marginal note: 6. ——: self-crimination of co-defendant: personal right: waiver.*

and not to the defendant, and the testimony was admissible as to the defendant, though it might not thereafter be used against the witness.

V. The defendant introduced testimony tending to establish an *alibi*. The court instructed as follows:

7. ——: alibi: burden of proof: instruction.
"Defendant claims that, at the time said cattle are said to have been stolen, he was absent from the place where the larceny was committed, if it was. This evidence in law is known as an "*alibi*." The burden of proof is on the state to establish beyond a reasonable doubt that the larceny charged was in fact committed. But, if the state has made this proof, then the burden of proof is on the defendant to establish by the weight or preponderance of the evidence his defense of *alibi*; but, if the entire evidence upon the whole case raises a reasonable doubt as to defendant's guilt, then you should acquit him." Appellant contends that this instruction relieved the state from the burden of proving that the defendant stole the cattle, and made it incumbent upon the defendant to prove that he did not steal them. The concluding sentence precludes such a construction of the charge.

VI. Appellant's further contention is that the verdict is not supported by the evidence, for that without

8. ——: corroboration of accomplice: questions for court and jury.
out the testimony of Harry Vance there is no evidence to convict; that, according to his own testimony, he was an accomplice, and is not corroborated by other evidence tending to connect the defendant with the commission of the offense. That Vance is avowedly an accomplice, and that without his testimony there was not sufficient evidence to convict, is manifest from the record. The corroboration required is "such other evidence as shall tend to connect the defendant with the commission of the offense." Code, sec. 4559. "If there is evidence which corroborates the accomplice, and tends to connect the defendant with the commission of the offense, its sufficiency is for the jury to determine." *State v.*

*Deitz*, 67 Iowa, 220. "We suppose it is a question for the court to determine whether there is any corroborating evidence in cases of this character, but it is for the jury to weigh and determine the effect of such evidence and its sufficiency, and each case must be determined upon its own facts, because, in the nature of things, the corroboration cannot be the same in any two cases." *State v. Miller*, 65 Iowa, 60. "It is not necessary that an accomplice should be corroborated in every material fact to which he testifies. 'If the jury are satisfied that he speaks the truth in some material part of his testimony, in which they see him confirmed by unimpeachable evidence, this may be ground for their believing that he also speaks the truth in other parts, as to which there may be no confirmation." *State v. Allen*, 57 Iowa, 435; *State v. Schlagel*, 19 Iowa, 169. We think there was sufficient evidence tending to corroborate the testimony of Vance to allow it to go to the jury. The testimony of Mr. Pope that he saw the defendant and Vance together pass his house in the evening, going in the direction of Ruby's, and that on the following morning the two cows were at his place, the place where the cattle were found, and defendant's relations to that place, and the testimony as to his leaving the state and denying his identity, all tended to connect him with the commission of the offense, and to corroborate Vance. True, the testimony was controverted by the defendant, but it was for the jury to say what of it was disproven or explained. We think there was not only sufficient corroboration to allow the testimony of Vance to go to the jury, but sufficient to support the verdict. There was no error in the instruction given on this subject. A careful examination of the entire record fails to disclose any errors. Our conclusion is that the judgment of the district court should be                                        AFFIRMED