[No. 123.   Third Appellate District.—August 10, 1905.]

In Re W. T. MITCHELL, on Habeas Corpus.

CRIMINAL LAW—EXPLOSION OF DYNAMITE IN WORKING MINE—"PLACE"—"STRUCTURE"—MEANING OF STATUTE.—A working mine in which men are employed, with its shafts, chutes, tunnels, stopes, excavated chambers, and its stulls to hold up the rock and dirt overhead, is within the act of March 12, 1887, making it a felony to explode dynamite in a "place where human beings usually . . . pass or repass," with intent to injure or destroy a "structure."

ID.—CONSTRUCTION OF PENAL STATUTES—COMMON-LAW RULE ABROGATED.—Penal statutes not part of the Penal Code are to be construed by no different rule from that declared in section 4 of the Penal Code, requiring its provisions "to be construed according to the fair import of their terms, with a view to effect its object and promote justice." That rule was designed to abrogate the old common-law rule that "penal statutes must be construed strictly."

ID.—SUFFICIENCY OF EVIDENCE—PRELIMINARY EXAMINATION.—Where the evidence produced at the trial was amply sufficient to convict the defendant of the felony charged, it is not material that the evidence produced at the preliminary examination was not sufficient of itself to warrant a conviction. All that is necessary in order

to hold the defendant to answer is that it shall appear that a public offense has been committed and that there is sufficient cause to believe the defendant guilty thereof.

PETITION for Writ of Habeas Corpus to test validity of a conviction in the Superior Court of Calaveras County. A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

C. H. Fairall, for Petitioner.

J. P. Snyder, District Attorney, and Solinsky & Wehe, for Respondent.

BUCKLES, J.—The petitioner was held. to answer on the following charge: "Did then and there willfully, unlawfully, feloniously and maliciously deposit and explode at, in, under and near a place where human beings usually assemble, frequent, pass and repass, to wit: in the levels, stopes and chutes of the Angels Quartz mine owned by the Angels Quartz Mining Company, a corporation, certain dynamite, hercules powder and explosives, with the intent to injure the said mine and the said structures therein and to injure and intimidate and terrify human beings, and by means of which human beings were endangered."

The charge is made under section 601 of the Penal Code, as amended in 1905, or, it is brought under section 8 of the act of March 12, 1887, (Stats. 1887, p. 110), which sections are identical one with the other, and read as follows: "Any person who maliciously deposits or explodes, or who attempts to explode, at, in, or under, or near any building, vessel, boat, railroad, tramroad, or cable-road or any train or car, or any depot, stable, carhouse, theater, schoolhouse, church, dwelling-house or other place where human beings usually inhabit, assemble, frequent, or pass and repass, any dynamite, nitro-glycerin, vigorite, giant or hercules powder, gunpowder, or other chemical compound or explosive, with the intent to injure or destroy such building, vessel, boat, or other structure, or with the intent to injure, intimidate, or terrify any human being, or by means of which any human being is injured or endangered, is guilty of a felony, and punishable by imprisonment in the state prison not less than one year."

It is claimed by petitioner that the charge must be brought under section 8 of the act of March 12, 1887, because that act had repealed section 601 of the Penal Code, and, it having been repealed, could not be amended by the attempt made in 1905. This contention is doubtless correct if the repeal was effected as claimed. (See Pol. Code, sec. 330.) If the section was really repealed in 1887, it has not been re-enacted, and the prosecution is under section 8 of the act of 1887. Even though there was no repeal, and the amendment of 1905 is proper, the importance to petitioner, according to his standpoint, to have the prosecution under the act rather than under the code, is readily discernible. He contends that the common-law rule that "penal statutes must be construed strictly" is in force in this state as to all penal enactments which are not a part of the Penal Code, while a different rule prevails as to the provisions of the Penal Code, to wit: "All its provisions are to be construed according to the fair import of their terms with a view to effect its object and to promote justice." (Pen. Code, sec. 4.) I know of no reason why a penal statute not a part of the code should be construed by any other or different rule than that prescribed for construing the provisions of the code. The rule laid down in section 4 of the Penal Code is a common-sense one, a rule which must. be acknowledged as just and proper and which does not operate to improperly deprive any person of his liberty. At the time the code was adopted, this rule was intended to apply to the entire body of criminal law in this state, and it was manifestly the intention that the old common-law rule of such strictness (applied sometimes without reason or sense) should be abrogated.

It surely would not be within the light of reason or sense to say that two laws of the same nature, operating upon the same class of persons or things, within the same system of jurisprudence, should have two distinct rules for their construction and interpretation, and that, too, simply because the legislature may see fit to make one enactment a part of the Penal Code and the other an act outside of the code. There can be but one rule for the construing of penal enactments in this state, and that is the universal one laid down by section 4 of the Penal Code. I shall view this proceeding as having been brought under the provisions of section 8 of the act of 1887.

How is it possible, after a careful reading of the section referred to, to come to any other conclusion than that when the legislature has pronounced against the malicious explosion of dynamite and other enumerated explosives (with intent to injure property and person) "at, in, under or near any building, vessel, boat, railroad, tramroad, or cable-road, or any train or car, or any depot, stable, carhouse, theater, schoolhouse, church, dwelling-house, *or other* place where human beings usually inhabit, assemble, frequent, or pass or repass," it was the clear intent to prohibit such use of dynamite and the other explosives at, and in every and all places whatsoever? Such construction is warranted by the very terms of the section, and will admit of no other rational construction, and any other construction would not be according to the fair import of the terms used and could not be with a view to effect the true object of the law nor in the line of promoting justice. But the petitioner contends that the language "with the intent to injure or destroy such building, vessel, boat, or other structure" must apply only to the things specifically enumerated, and that "other structure" includes nothing more than "railroad, tramroad, or cable-road, or any train or car, or any depot, stable, carhouse theater, schoolhouse, church, or dwelling-house."

But this construction cannot be. For the purpose of illustration, suppose one maliciously explodes dynamite on or under a private foot-bridge, constructed and built over a ravine where "human beings pass and repass," with intent to destroy the bridge or injure or intimidate persons. Private foot-bridge not being enumerated in the list of places such as "building, vessel, boat," etc., can it be said that "other places where human beings pass and repass" would not include a private foot-bridge? The object of the statute is to prevent the injury to property and person and the intimidation of human beings by the malicious explosion of dynamite, etc., and, to my mind, there is no question but that "private foot-bridge" would be included in the term "other place where human beings pass and repass." Such foot-bridge would undoubtedly be a structure, and would come within the term "other structure" used in the statute.

That a working mine constructed as the Angels quartz mine is shown to be, with its shafts, chutes, tunnels, levels, stopes,

excavated chambers, and stulls to hold up the rock and dirt overhead, is a *structure* in the common-sense view of the term seems to me to admit of no doubt. *It is a structure,* and meets every requirement of the letter and spirit of the statute. To say that a man may do the things to wreck a mine that defendant is charged with doing and be able to escape responsibility therefor under the law reading as said section 8 reads, simply because it does not mention the word "mine," would be, to say the least, using a rule of construction not warranted even by the common-law rule which petitioner invokes. The act here sought to be punished surely comes within the reason and spirit, as well as the mischief the law was intended to remedy,—to wit, the malicious explosion of dynamite and other enumerated explosives, with intent to injure property and human beings.

It is next claimed there is no evidence connecting the petitioner with the commission of the offense, except that of the witness Holmes, who is shown by his own admissions to be a co-conspirator and an accomplice. There is evidence in abundance to show a well-directed effort on the part of some one to wreck the mine, to prevent its being worked, or to make it more difficult to work and to increase the expense of working, by blowing up the foot-walls, blasting the timbers which held up the rock and dirt of the hanging-wall, and thus allowing the rock and dirt to run in on the stopes and fill them and cave them in, and make the levels of the mine very dangerous for men to work therein by reason of the supports, the stulls, being blown out from the roof of the chutes and levels, and that the wrecking began in the lower levels of the mine. The evidence also shows that the men then working in the mine were removed to other parts of the mine while the malicious blasting was being done, from which it would appear that those doing this work did not intend to injure the men then working in the mine. But the motive of the persons engaged in the wrecking seemed to be to make it disagreeable and dangerous for the men who should take the places of the wreckers, for they knew they were to be discharged or work under a new boss. There was a large force of men at work in the mine. The petitioner was the boss, with power to move the men from place to place in the mine, and just before a certain place was wrecked the men were moved to some other

place, with only the petitioner to direct them; and Holmes was the man in charge of the blasting-powder and subject only to the direction of petitioner as to its use. The circumstances under which the wrecking of the mine was accomplished are shown by other witnesses than Holmes to be such that it was next to impossible for the work of destruction to have been done by another without the knowledge, yes, and the direction of the petitioner. The evidence of the witnesses N. Jakuliza, A. Prothero, J. W. Ling, Martinovich, Arnold Adams, and Thomas Fulton, taken together, tends in a strong degree to identify the petitioner as one of the guilty parties and tends to connect him with the commission of the offense. The evidence produced upon the preliminary examination, independent of that given by the accomplice Holmes, would probably not be sufficient to show beyond a reasonable doubt the guilt of petitioner, but, in order to hold the defendant and to put him on his trial, the committing magistrate is not required to find evidence sufficient to warrant a conviction. All that is required is, that there be sufficient legal evidence to make it appear that "a public offense has been committed and there is sufficient cause to believe the defendant guilty thereof."

There was then sufficient evidence to warrant the justice in holding the petitioner and committing him for trial.

The petitioner is remanded.

McLaughlin, J., and Chipman, P. J., concurred.