(June 19, 1906.)

## STATE, Respondent, v. WILLIAM HENRY HICKS BOND, Appellant.

[86 Pac. 43.]

PRELIMINARY EXAMINATION—MOTION TO SET ASIDE INFORMATION—CORROBORATION OF ACCOMPLICE—SUFFICIENCY OF EVIDENCE—INSTRUCTIONS—ERRONEOUS INSTRUCTIONS—NEWLY DISCOVERED EVIDENCE.

1. Where two parties are separately charged with a felony, upon the preliminary examination of one, the other is called as a witness on behalf of the prosecution, he may refuse to answer any questions either on his examination in chief or on cross-examination that would tend in the least to incriminate him.

2. A motion to set aside the information on the ground that the witness or accomplice refused to answer certain questions on cross-examination at the preliminary examination that in the opinion of the witness tended to incriminate her, will not be sustained.

3. Under the provisions of section 7871, Revised Statutes, an accomplice must be corroborated on some material fact or circumstance which tends to connect the defendant with the commission of the offense, independent of the evidence of the accomplice.

4. Where there are disputed facts submitted to a jury, their verdict will not be disturbed by this court, unless it is apparent from the record that their verdict is unwarranted by the evidence. *Held,* the evidence sufficient in this case to support the verdict.

5. Where the instructions, taken as a whole, amply and fully state the law of the case, the judgment will not be reversed, it being the duty of the jury to consider the entire charge, even though there may have been an instruction partially erroneous, where it is evident that such instructions did not mislead the jury.

6. Where it is shown that the court erroneously instructed the jury that they "should act upon the evidence of an accomplice with great care and caution, and subject it to careful examination in the light of all the evidence in the case, and the jury ought not to convict upon such testimony alone, unless after a careful examination of such testimony they are satisfied, beyond all reasonable doubt, of its truth," is not sufficient ground for a reversal of the judgment where it is shown the court had twice given the statutory instruction that the accomplice must be corroborated, and it is shown that the accomplice has been corroborated.

7. A new trial will not be granted on the ground of newly discovered evidence, unless it is shown that the introduction of such evidence might change the result of the verdict of the jury in another trial, and sufficient reason must be shown why such evidence could not have been presented at the former trial.

(Syllabus by the court.)

APPEAL from District Court of the Third Judicial District for Ada County. Hon. George H. Stewart, Judge.

Appellant was prosecuted in the lower court on information of the prosecuting attorney charging him with murder, and was found guilty of murder in the first degree. Judgment pronouncing the death penalty was entered, from which and an order overruling a motion for a new trial, the appeal is taken. *Affirmed.*

Silas W. Moody and Perky & Blaine, for Appellant.

Whenever corroboration of the testimony of an accomplice is required it must be as to material facts. (*Kenyon v. People,* 26 N. Y. 203, 84 Am. Dec. 177; *People v. Plath,* 100 N. Y. 593, 53 Am. St. Rep. 236, 3 N. E. 790; *People v. Courtney,* 28 Hun (N. Y.), 589; *People v. Williams,* 29 Hun (N. Y.), 520; *State v. Spencer,* 15 Utah, 49, 49 Pac. 302; *People v. Thompson,* 50 Cal. 480; *People v. Morton,* 139 Cal. 719, 724, 73 Pac. 609; *Frazer v. People,* 54 Barb. 310; *People v. Koening,* 99 Cal. 574, 576, 34 Pac. 238.)

The accomplice having gone upon the stand and disclosed matters which she might have refused to answer, she waived her privilege, and defendant had the right to cross-examine

her thoroughly upon all matters connected with her direct examination. (*State v. Larkin,* 5 Idaho, 200, 47 Pac. 945.) In no event should her counsel have been permitted to make the claim of privilege for her, the rule being that the claim is for the witness alone to assert. (1 Greenleaf on Evidence, 16th ed., 613; Underhill on Criminal Evidence, 304; *State v. Kent (State v. Pancoast),* 5 N. Dak. 516, 67 N. W. 1052, 35 L. R. A. 518; *State v. Wentworth,* 65 Me. 234, 20 Am. Rep. 688.)

After the court instructs the witness that he need not answer, as was done by the magistrate in this case, the witness may then answer if he choose to do so, and if after such caution he answers the question fully, he may then be compelled to divulge every detail of the incriminating transaction. (Underhill on Criminal Evidence, sec. 247, citing *Williams v. State,* 98 Ala. 52, 13 South. 333; *Commonwealth v. Pratt,* 126 Mass. 462; *State v. Van Winkle,* 80 Iowa, 15, 45 N. W. 388; 3 Rice on Criminal Evidence, 517, 518, 521, citing *Commonwealth v. Price,* 10 Gray, 472, 71 Am. Dec. 688; *State v. Foster,* 23 N. H. 348, 55 Am. Dec. 191; *Foster v. Pierce,* 11 Cush. 437, 59 Am. Dec. 152; *Foster v. People,* 18 Mich. 276; *State v. Ober,* 52 N. H. 459, 13 Am. Rep. 88.)

An accomplice is not entitled to the same privilege as an ordinary witness. (*Alderman v. Epole,* 4 Mich. 414, 9 Am. Dec. 321.) Great latitude should be allowed in the cross-examination of an accomplice. (3 Rice on Criminal Evidence, 517.)

The right to cross-examine witnesses is a substantial right of great advantage to the accused, which, if denied, deprives him of a valuable right. (*Matter of Gessner,* 53 How. Pr. (N. Y.) 519.)

A correct instruction cannot be said to modify or supplement a wrong one, as is the case where they are not contradictory. (Hughes' Instructions to Juries, sec. 247, and cases cited; *Lufkins v. Collins,* 2 Idaho, 152, 7 Pac. 95; *Holt v. Spokane R. R. Co.,* 3 Idaho, 703, 35 Pac. 39; *State v. Webb,* 6 Idaho, 428, 55 Pac. 892.)

The giving of two instructions widely differing from each other on the same vital point in issue in a case is such error that a new trial will be given. An absolute misstatement of the law in giving instructions is not corrected by properly stating the law in other instructions. (Hughes' Instructions to Juries, sec. 248; Sackett's Instructions to Juries, 2d ed., sec. 27, and cases cited; *Mackey v. People,* 2 Colo. 13; *People v. Campbell,* 30 Cal. 312; *Clair v. People,* 9 Colo. 122, 10 Pac. 799.)

And it must affirmatively appear that an error in a charge did not prejudice defendant, or it is cause for reversal.

J. J. Guheen, Attorney General, Edwin Snow, Chas. F. Koelsch, County Attorney, and H. L. Fisher, for Respondent.

The case of an accused in a criminal trial who voluntarily takes the stand is different from that of the ordinary witness. Here his privilege has protected him from being asked even a single question, for the reason that no relevant fact that could be inquired about would not tend to criminate him. (4 Wigmore on Evidence, 3153, par. 2276.) But a witness situated as Mrs. Daly was may be compelled to be sworn and to answer all such questions as will not incriminate him, and whether a question will necessarily elicit such answer is not left solely to the judgment or caprice of the witness; the court must rule on the objection. (*Ex parte Stice,* 70 Cal. 51, 11 Pac. 459; *In re Rogers,* 129 Cal. 468, 62 Pac. 47; *Overend v. Superior Court,* 131 Cal. 280, 63 Pac. 372; *People v. Plyler,* 121 Cal. 160, 53 Pac. 553.)

The crime itself was a distinct act, and to have compelled her to give evidence showing her an accessory would have violated her privilege. (*Evens v. O'Conner,* 174 Mass. 287, 75 Am. St. Rep. 316, 54 N. E. 557; *Lombard v. Mayberry,* 24 Neb. 671, 8 Am. St. Rep. 234, 40 N. W. 271; *Emery v. State,* 101 Wis. 627, 78 N. W. 145.)

Mere irregularities or defects in the preliminary examination of a charge will not render it invalid unless they actually prejudice the defendant, or tend to his prejudice in respect

to some substantial right. (*State v. Clark,* 4 Idaho, 7, 35 Pac. 710; *People v. Rodrigo,* 69 Cal. 601, 11 Pac. 481; *State v. Bailey,* 32 Kan. 83, 3 Pac. 769; *People v. McCurdy,* 68 Cal. 576, 10 Pac. 207; *People v. Van Horn,* 119 Cal. 323, 51 Pac. 538; *Hamilton v. People,* 29 Mich. 173.)

Counsel have the right in protecting their clients to raise the point of privilege and call the attention of the court to the matter. (*State v. Kent,* 5 N. Dak. 516, 67 N. W. 1052, 35 L. R. A. 518.)

The scope and purpose of a preliminary examination is merely to ascertain that a public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof. (Rev. Stats. 1887, 7579; *State v. Potter,* 6 Idaho, 584, 57 Pac. 431; *In re Levy,* 8 Idaho, 53, 66 Pac. 806; *In re Mitchell,* 1 Cal. App. 396, 82 Pac. 347; *Jahnke v. State,* 68 Neb. 154, 94 N. W. 158, 104 N. W. 154.)

The relations shown to have existed between the defendant and his accomplice supply corroboration of the accomplice's testimony as to motive. (*People v. Cook,* 148 Cal. 334, 83 Pac. 43.)

Illegality in the mode of obtaining evidence cannot exclude it, but must be redressed, or punished, or resisted by appropriate proceedings otherwise taken. (3 Wigmore on Evidence, sec. 2183.)

Defendant's letter was introduced for the sole purpose of showing motive, and it was by the court limited to this purpose. If it is admissible for the purpose claimed, then the other consideration that it may discredit the defendant with the jury cannot bar its admission, but requires only that its purpose be limited by instructions from the court. (1 Wigmore on Evidence, sec. 13; *Conde v. State,* 35 Tex. Cr. 98, 60 Am. St. Rep. 22, 34 S. W. 286; *Thornley v. State,* 36 Tex. Cr. 118, 61 Am. St. Rep. 837, 34 S. W. 264; *People v. Gray,* 66 Cal. 271, 5 Pac. 240.)

For the purpose of proving motive for the murder of the deceased, evidence of the declarations of the defendant tending to show intimate friendship or meretricious relations be-

tween him and the wife of the deceased is competent; and the fact that the declarations were of a vague and general character goes to their weight and not to their admissibility. (*People v. Brown,* 130 Cal. 591, 62 Pac. 1072.)

Instructions must never be considered separately, but each as limiting and interpreting other portions, and if the law is correctly stated when the instructions are thus considered, the verdict and judgment will not be disturbed. (*Kennon v. Gilmer,* 5 Mont. 257, 51 Am. Rep. 45, 5 Pac. 847; *People v. Armstrong,* 114 Cal. 570; *People v. Cleveland,* 49 Cal. 577; *People v. Warren,* 130 Cal. 683, 63 Pac. 86; *People v. Dole,* 122 Cal. 468, 68 Am. St. Rep. 50, 55 Pac. 581; *State v. Corcoran,* 7 Idaho, 220, 61 Pac. 1034.) The testimony necessary to corroborate that of an accomplice need not be strong. (*People v. McLean,* 84 Cal. 480, 24 Pac. 32; *People v. Melvane,* 39 Cal. 616; *People v. Clough,* 73 Cal. 348, 15 Pac. 5.)

The strength or credibility of the corroborating evidence is for the jury. (*People v. Barker,* 114 Cal. 617, 46 Pac. 601.)

STOCKSLAGER, C. J.—This is an appeal from a judgment and order overruling a motion for a new trial. The appellant was prosecuted in the district court of Ada county on a charge of murder on information filed by the prosecuting attorney. The information charges that said "Fred Bond, on the sixth day of October, A. D. 1904, at the county of Ada, state of Idaho, in and upon one Charles Daly, did feloniously, unlawfully, willfully, deliberately, premeditatedly and of his deliberately premeditated malice aforethought, make an assault, with a certain pistol, to wit, a revolver, which said revolver was then and there loaded with powder and leaden bullets, and which said revolver, he, the said Fred Bond, in his hands then and there had and held, feloniously, unlawfully, willfully, premeditatedly, and of his malice aforethought, and with the intent, him, the said Charles Daly, then and there to kill and murder, did then and there shoot off and discharge at, upon and against him, the said Charles Daly,

thereby and then and there inflicting upon the body of him, the said Charles Daly, a certain mortal wound, of which said mortal wound inflicted as aforesaid, the said Charles Daly then and there died. And so the Fred Bond did in manner and form aforesaid, feloniously, unlawfully, willfully, deliberately, premeditatedly and of his deliberately premeditated malice aforethought, kill and murder the said Charles Daly, contrary to the form, force and effect of the statute," etc.

The defendant was arraigned and the information read to him and time fixed for his plea on January 26, 1905, at 2 o'clock P. M. At this hour his counsel, Perky & Blaine, appeared and filed a motion to set aside the information for the following reasons: "That before the filing of said information this moving defendant had not been legally committed by the magistrate who conducted the preliminary examination in this cause, in that the defendant was denied the right to cross-examine as to material issues of fact, the witness Jennie Daly, who appeared and testified at said examination as a witness in behalf of the state of Idaho. This motion is based upon the files in this cause and upon the record, depositions and testimony taken at the examination of this defendant upon this charge now on file in this court, and upon affidavits filed and served herewith. Then follows the affidavit of Silas W. Moody, attorney for defendant on the preliminary examination of defendant, and the affidavit of defendant, in both of which it is shown that J. J. Blake appeared at said preliminary examination as attorney for Jennie Daly, for the sole purpose of protecting her interests at such examination. Mr. Moody testifies that Jennie Daly was a witness in behalf of the state, and that he made an effort to cross-examine her in behalf of the defendant. "That J. J. Blake, apparently in the interest of the witness, Jennie Daly, was permitted by the examining magistrate to object to certain questions propounded by affiant on cross-examination to said Jennie Daly, on the ground that the answers to said questions might incriminate said Jennie Daly, and tend to furnish evidence to

convict her of an offense under the laws of the state of Idaho. . . . . That she never personally or otherwise than by counsel claimed the privilege of refusing to answer said questions except as above stated. That she never gave any reason for refusing to answer. That the examining magistrate never directed her to answer any of said questions, but always sustained the objections made to the same.'' The affidavit of appellant is to the same effect. In further support of their motion, counsel for appellant ''presented and read to the court the testimony of Jennie Daly from the files of the court taken from the magistrate's return of the deposition and proceedings of the preliminary examination of this case.'' It may be as well to suggest here that the witness, Jennie Daly, was also charged with the murder of Charles Daly, and was tried and convicted of the crime of manslaughter. It may be necessary later on in this opinion to refer to the testimony above referred to. It is shown by the transcript that the examination of the witness begins at folio 25 and runs to and includes folio 88, much of it consisting of cross-examination, The motion to set aside the information was overruled, and the defendant being again arraigned for plea said he was not guilty. A trial was had and thereafter a verdict of guilty of murder in the first degree was returned and time for sentence was announced by the court to be on the eighteenth day of February, 1905, at which time the statutory death sentence was pronounced.

This appeal is from the judgment and from an order overruling a motion for a new trial. Learned counsel for appellant have assigned a great number of errors, mostly alleged to have occurred during the trial. The first assignment we find is the refusal of the court to set aside the information on motion of appellant on the ground that appellant had not had a preliminary examination as contemplated by our statute. Many pages of the brief of counsel for appellant are directed to a discussion of this question, and numerous authorities cited, it is claimed, in support of their position. We find from the record that there are a number of undisputed

facts existing in this case. (1) That Charles Daly was found dead in his own home on the sixth day of October, 1904, in Boise, county of Ada, state of Idaho. (2) That certain wounds were found upon his person sufficient to cause his death. (3) That the first information of the death of Daly obtained by the officers was from appellant who informed them that he (Daly) had been killed by his wife. (4) That Daly had been dead several hours before the officers were informed by appellant of his death. (5) That the only inmates of the Daly home were Mr. Daly, Mrs. Daly, their child about two years of age, and appellant. (6) That appellant and Mrs. Daly were frequently together visiting places of amusement, and that Mr. Daly was dissatisfied with such apparent intimacy which led to disputes and ill-feeling between himself and wife, we think is established by the evidence. Under these circumstances, it was but natural that suspicion should rest upon Mrs. Daly and appellant when it was learned by the officers that a crime had been committed and that Mr. Daly had, for some reason, been murdered, hence their arrest and subsequent trials on the charge of murder. On the preliminary examination of appellant, Mrs. Daly was sworn as a witness on behalf of the prosecution and detailed her story of the murder in which Mr. Daly's life was taken. As we gather from the record, at the time she was a witness for the prosecution above referred to, a similar charge was pending against her in one of the courts of the city. She was informed by the court that she could refuse to answer any question that would in any way incriminate her. At this hearing, J. J. Blake, an attorney of this court, appeared on behalf of Mrs. Daly and objected to answers to a number of questions on the ground that such answers might incriminate her. In each instance the witness refused to answer, and the examining court, although requested by counsel for appellant, declined to require an answer or punish for contempt. Upon the record thus made in the examining court, the appellant insists that he did not have a statutory preliminary examination, and that his motion to set aside the

information should have been sustained. The brief of counsel for respondent furnishes us with a list of the questions which the witness declined to answer while testifying at the preliminary examination: "Q. Did you tell him that you had hid them in the lamp? Q. How did Fred Bond learn where those cartridges were that night? Q. Did you see Fred Bond take any of those cartridges out of the box which you say you concealed in the lamp? Q. Where did Fred Bond get the cartridges that you saw him place in the revolver or gun just after he struck Mr. Daly with this hatchet? Q. Where did you last see the box of cartridges in the house where you resided in on October 5th and 6th, 1904? Q. At what time of day or night did you last see the box of cartridges in your house? Q. What other articles, if any, did you place upon the kitchen table where the revolver was placed? Q. Did you see any other articles placed upon the table where the revolver was placed? Q. Did you place any other article, or articles, upon that kitchen table that morning besides the revolver? Q. Did you know what became of the box of cartridges after you hid them in the lamp in the front room?" It is disclosed by the record that the witness had told just how Mr. Daly came to his death, and in positive language declared that the fatal wounds were inflicted by the appellant. He was thus informed what he must prepare to meet on the trial. In unequivocal language she declares that appellant shot the deceased four times and inflicted four wounds, she thinks, upon his head with a hatchet. Can it be successfully contended that had the witness answered each and all of the above questions in the most favorable light possible to appellant in connection with her positive declarations that the fatal wounds were the results of blows and shots at the hands of appellant, that it would have in the least degree palliated his crime if her statements were to be believed as to the manner and direct cause of the death of Daly?

Counsel for appellant cite many authorities, and with commendable ability urge that the witness Jennie Daly "having gone upon the stand and disclosed matters which she might

have refused to answer, she waived her privilege, and that defendant had the right to cross-examine her thoroughly upon all matters connected with her direct examination.'' It must be remembered that the witness was not a voluntary one; she had been called as a witness on behalf of the state and the prosecution had the right to interrogate her on any matters connected with the homicide that did not tend to incriminate herself. In support of this contention that they should have been permitted to cross-examine the witness ''thoroughly upon all matters connected with her direct examination,'' our attention is called to *State v. Larkin,* 5 Idaho, 200, 47 Pac. 945. In this case the defendant was on trial charged with murder. He voluntarily took the witness-stand and gave testimony in his own behalf. In the opinion on rehearing the court say: ''This act (referring to acts fifteenth session, page 2), was not cited in appellant's brief, nor in the argument of the case, and we inadvertently overlooked it in considering this case. The amendment to section 6079, cited above, changes the practice as to the manner of cross-examination of a witness, and by express terms limits such cross-examination to the facts stated in his direct examination or connected therewith. Under this rule the defendant in a criminal action who has testified in his own behalf can only be cross-examined by the state as to the facts stated on his direct examination, or connected therewith.'' The distinction between one who voluntarily offers himself as a witness in his own behalf and one who may be placed upon the witness-stand and required to testify concerning anything that does not tend to incriminate himself, is easily drawn, and the reasons are obvious. In this state one charged with crime may or may not testify, at his option, but if he does testify concerning any matter connected with the transaction, he may be fully cross-examined pertaining to any matters of which he has testified, whilst one—as was the case with the witness Mrs. Daly—may be compelled to testify concerning any crime, so long as the testimony does not tend to incriminate the witness. Counsel for appellant insist that in no event should counsel for witness Jennie Daly have been

permitted to make the claim for her—that is, to refuse to
answer questions on cross-examination—"the rule being
that the claim is for the witness alone to assert," and in
support of this contention they cite Greenleaf on Evidence,
16th ed., 613; Underhill on Criminal Evidence. sec. 304;
*State v. Pancoast*, 5 N. Dak. 516, 67 N. W. 1052, 35 L. R. A.
518. Next they say: "We understood the law to be that, if
after the court instructs the witness that he need not an-
swer, as was done by the magistrate in this case, the witness
may then answer if he choose to do so, and if, after such
caution, he answers the question fully, he may then be com-
pelled to divulge every detail of the incriminating trans-
action"; citing Underhill on Criminal Evidence, sec. 247;
*Williams v. State*, 98 Ala. 52, 13 South. 333; *Commonwealth
v. Pratt*, 126 Mass. 462; *State v. Van Winkle*, 80 Iowa, 15,
45 N. W. 388; 3 Rice on Criminal Evidence, 517, 518, 521;
*Commonwealth v. Price*, 10 Gray, 472, 71 Am. Dec. 668. If
all counsel contend for under this assignment of error should
be conceded, would it be sufficient to warrant this court in
reversing the judgment with the entire record before us
for review. We think not. The object of a preliminary ex-
amination is to ascertain whether a crime has been committed,
and if so, whether there is probable cause for believing that
the accused is guilty. When this fact has been ascertained,
the requirements of the statute have been satisfied, and it
becomes the duty of the examining magistrate to hold the
accused with or without bail for his appearance at the next
term of the district court. It is in no sense a trial, the only
purpose being to ascertain whether the accused should be tried
for the alleged crime in the manner prescribed by law.
(Rev. Stats., sec. 7579; *State v. Potter*, 6 Idaho, 584, 57 Pac.
431; *In re Levy*, 8 Idaho, 53, 66 Pac. 806; *In re Mitchell*, 1
Cal. App. 396, 82 Pac. 347; *Johnke v. State*, 68 Neb. 154, 94
N. W. 158, 104 N. W. 154.)

It is shown by the record that learned counsel for appel-
lant very skillfully cross-examined the witness, Mrs. Daly,
and received answers to all of his questions with the excep-
tions heretofore enumerated. From this examination appel-

·lant was informed just what he had to meet from this witness on the trial; hence no difference what her answers may have been to the questions, it would not have served the purpose of releasing him. In our view the only result of any answer she may have given in the most hopeful language possible for appellant would have shown her guilty knowledge of and participation in the commission of the homicide. Section 7579, Revised Statutes, prescribes the duties of the examining magistrate in the following language: "If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must indorse on the depositions an order, signed by him, to the following effect: It appearing to me that the offense in the within depositions mentioned . . . . has been committed, and that there is sufficient cause to believe that the within named A B guilty thereof, I order that he be held to answer the same."

In *State v. Potter,* 6 Idaho, 584, 57 Pac. 431, this court held that the depositions taken on the preliminary examination of one charged with a criminal offense were not admissible as evidence on the trial, under the statutes of Idaho. To the same effect, see *In re Levy,* 8 Idaho, 53, 66 Pac. 806. In *Re Mitchell,* 1 Cal. App. 396, 82 Pac. 347, the supreme court of California say: "To authorize a committing magistrate to hold one for trial, the evidence produced need not be enough to warrant a conviction. It is enough that there is evidence making it appear that there is sufficient cause to believe defendant guilty of an offense." (See *Johnke v. State,* 68 Neb. 154, 94 N. W. 158, 104 N. W. 154.) We find no error in the ruling of the court overruling the motion.

Counsel for appellant insist that the court should have granted appellant a new trial on their assignment of "insufficiency of the evidence to justify the verdict." It is true, as urged by counsel, that if the appellant is guilty as charged in the information and as returned by the jury, the evidence upon which such verdict is founded is principally that of Jennie Daly, his accomplice in the homicide. Other facts and circumstances were before the jury, which, under the

instructions of the court, doubtless aided in the final determination and verdict of guilty as charged. It is shown that appellant was an inmate of the Daly home, which was at times distasteful to deceased; that he (Daly) had said to his wife that people were talking about her being seen in company with appellant so frequently; that they were seen together at various places of amusement in the city; that he had written a letter to his sister in which he said he was married, and described his wife as a woman in many respects resembling Mrs. Daly in appearance and nationality; that he did not notify the officers of the death of Mr. Daly until several hours after the occurrence of the homicide. These, and many other facts, are noticeable all through the record, and many of them came from other sources than the testimony of Mrs. Daly. Now, under these circumstances, was there motive on the part of the appellant to take the life of the husband of the woman with whom he frequently associated? Was there a reason to remove the only obstacle in the way of closer relations with this woman? Doubtless all these questions appealed to the jury, and had much to do with their deliberations and final conclusion.

It is said in *Commonwealth v. Ferrigan,* 44 Pa. St. 386: ''He is a poor judge of human motives and impulses who could not see in such a relation as is proposed to be proved here between the deceased's wife and the prisoner, that it might lead to the perpetration of the crime charged, or who would deny that it would probably shed light on the motive. History is full of such examples.'' When it was ascertained that Mr. Daly had been murdered several hours before information was conveyed to the officers, and that the first information came from appellant, it was but natural that suspicion should fall upon appellant and Mrs. Daly, and that their prompt arrest should follow.

It is earnestly urged by counsel for appellant that their objection to the admission of the letter above referred to should have been sustained. Before the letter was read to the jury the court made the following statement: ''I will say, gentlemen of the jury, that this letter which is admitted as evidence,

is admitted on the contention of the state that it has a tendency to prove a motive for the commission of the crime charged, and is offered and received for that purpose and that purpose only." The letter follows:

"Sept. 23rd 04

"Dear Sister and Brothers

"Just a line or two to let you know how i am or where i am living or dead It is a long time since i heard from you which i would be glad to hear from. I am still living got good health and i wish all of you the same I hope susan is still living i hope to meet all of you next spring I am married got a little French girl my family is one girl I dont have to work hard i am in a office Gas Office Living in a city where it is always fine weather never no snow here I hope Nettie is not mad with me i want to be friends with her she knows i respects her and always shall i wonder where she married or not tell me Reuben or where she is sparking i hope she have nice fellow I married the bell of St. Louis she can sing or dance we do take on to all theaters that come here i went to Ringling Bros. with her and everywhere else I shall be satisfied with her til spring and then it will be goodbye to her She would soon bust up a millionare if she had her way Now if you respect me and write me i will send a picture of me and her and baby I would like for Nettie to write me But try one of you to write me i am so anscous to hear from you Give my kind love to Fred and Annie Pedlar Harry you promise me you would write a line or two to me We will have a good time Harry when we meet Reuben and Harry and Nettie try to write a good long letter goodbye remember to the girls from your own loving Brother

"FRED BOND.

"414 North 3rd St Boise City, Ida."

The above letter was state's exhibit 19. Exhibit 20 was an envelope addressed as follows: "Miss Nettie Hicks, No. 12 Walnut St. Old Tamarack Calumet Houghton, Cy., Mich." stamped "Boise. Idaho, Sept. 24, 12 M. 1904." It is urged

that: "The prosecution failed to disclose in what manner it came into their possession, in whose custody it had been, or to give the information that is usually given preliminary to an offer of this character." It does not occur to us that it is a matter of great importance how the letter found its way into the hands of the prosecution. The important questions are: Did appellant write the letter, and if so, do the contents show a motive on his part for the commission of the homicide?

In 3 Wigmore on Evidence, section 2264, page 3126, the author says: "If there was ever any rule well settled . . . . it was this: that an illegality in the mode of obtaining evidence cannot exclude it, but must be redressed or punished or resisted by appropriate proceedings otherwise taken." For a further discussion of this question, see section 2183, same author and volume. It was shown that the letter was signed in the name of Fred Bond, the name by which he was known in Boise City. It was shown that after his signature to the letter he gave his address as 414 North Third Street, the home of the Dalys at that time, and that he was making their house his home. It was shown that the letter was written in red ink and that was the kind of ink used at the Daly home; that the letter was written in the handwriting and the envelope was addressed by Fred Bond. That he was working about the gas office about the time of the date of the letter.

It is insisted that the witness J. D. Agnew, Jr., did not sufficiently qualify as an expert in handwriting to answer as to who wrote the letter and addressed the envelope. He testified that he had seen appellant write on several occasions and was very positive in his declarations that appellant wrote the letter and addressed the envelope.

Mr. Wigmore, in his excellent work on Evidence, volume 1, section 694, says: "Whether one could obtain a sufficient notion of the general character of a person's hand by seeing him write once only might well have been doubted. Tradition, however, has handed down a fixed rule that seeing a person write once only is, as a matter of law, sufficient." Authorities are cited in support of this text.

In *The Queen v. Silverlock* [1894], L. R. 2 Q. B. 766, 9 Am. Cr. Rep. 276, the fourth clause of the syllabus says: "That a witness giving evidence under this section need not be a professional expert, or a person whose skill in the comparison of handwriting has been gained in the way of his profession or business." When the witness Agnew, Jr., testified in positive language that the handwriting was that of appellant, and that he based his opinion on the fact that he had on several occasions seen his handwriting or saw him write, it was sufficient for the purposes of the prosecution; then counsel for the appellant had the opportunity by cross-examination to show that his knowledge was not based on a sufficient foundation to entitle it to any weight with the jury, in whose hands the entire question of the sufficiency of his knowledge of appellant's handwriting was pending. The learned trial judge not only warned the jury just prior to the reading of the letter that the only purpose of its introduction was to show a motive on the part of appellant to commit the crime as claimed by the prosecution, but in his instruction No. 46 he says: "You are instructed that the letter introduced in evidence as state's exhibit No. 19, and alleged to have been written by defendant, was read in evidence for the sole purpose of showing the alleged motive of the defendant. You are to consider it from that standpoint alone, and give it such weight as you deem it entitled to in connection with all the other evidence in this case. It has no value or place in the evidence for any other purpose."

Before the prosecution could reasonably hope for a conviction of appellant in this case it was necessary to show some motive in taking the life of deceased. As a rule, motive can only be shown by circumstances and conditions. Men who commit crime are not liberal advertisers of their intentions, and quite generally motive as well as malice, and frequently intent, can only be shown by circumstances, a combination of which may furnish an irresistible chain at least sufficient to require an explanation from the accused.

In *Walker v. State,* 85 Ala. 7, 7 Am. St. Rep. 17, 4 South. 686, it is said: "Motive is an inferential fact, and may be inferred not merely from the attendant and surrounding circumstances, but, in conjunction with these, all previous occurrences having reference to and connected with the commission of the offense." (1 Wigmore on Evidence, sec. 193; *People v. Wood,* 3 Park Cr. Rep. (N. Y.) 681.)

In *People v. Brown,* 130 Cal. 591, 82 Pac. 1072, it is said: "For the purpose of proving motive for the murder of the deceased, evidence of the declarations of the defendant tending to show intimate friendship or meretricious relations between him and the wife of the deceased is competent; and the fact that the declarations were of a vague and general character goes to their weight and not to their admissibility." The above quotation is from the fifth clause of the syllabus. (See Underhill on Criminal Evidence, sec. 62.)

In *People v. Cook,* 148 Cal. 334, 83 Pac. 43, a very recent decision of the supreme court of California, it is held that a letter of a similar character to the one introduced in evidence in the case at bar was admissible. We find no error in the ruling of the court admitting the letter in evidence under the restrictions shown by the statement of the court at the time of its admission, and the instruction relative to the letter thereafter given.

Counsel for appellant attack many of the instructions given by the court on its own motion as well as refusal to give requests of appellant and the modification of other requests of appellant. We find that instruction No. 31 is in the following language: "The jury should act upon the evidence of an accomplice with great care and caution, and subject it to careful examination in the light of all other evidence in the case, and the jury ought not to convict upon such testimony alone, unless after a careful examination of such testimony they are satisfied beyond all reasonable doubt of its truth." This instruction is clearly erroneous and should not have been given, as it does not state the law; neither is it in harmony with instructions 29 and 30. Instruction No. 29 reads: "Under

the law of this state a conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense. And the corroboration is not sufficient if it merely shows the commission or the circumstances thereof.'' No. 30 reads: ''Under the provisions of the statute of this state the corroborating evidence must in itself, without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense. This corroborating evidence need not be sufficient of itself to establish the guilt of the defendant, but it must tend in some degree to implicate and connect the defendant with the commission of the offense charged. The requirements of the statute are fulfilled if there be any corroborating evidence which of itself tends to connect the defendant with the commission of the offense. The statute does not require that such witness should be corroborated in respect to every material fact, but only in respect to such of the material facts as constitute the necessary elements in the crime charged.'' The last two quoted instructions correctly state the law of the subject of corroboration. The question to be determined is: Was the jury misled, and could it have been directed to its final conclusion by instruction 31? If so, the judgment should be reversed and a new trial ordered. As has heretofore been said, there were a number of corroborating circumstances amply sufficient to bring this case within the rule of necessary corroboration prescribed by our statute, and it is further apparent that the jury was not misled by the erroneous part of said instruction, as there was ample and abundant corroboration of the accomplice. The court had told the jury in instruction No. 21: ''Subdivision 3 of this instruction must be read and considered by the jury in connection with instruction No. 22, as well as all the instructions in this case.'' Again, in 47 the court says: ''All the instructions given you by the court should be taken and read together and considered as a whole as the law governing this case.''

In *People v. Cleveland,* 49 Cal. 577, the court say: "While some of the instructions are perhaps subject to criticism and may not state the law with precise accuracy, yet, taken as a whole, they were substantially correct and could not have misled the jury to the prejudice of the defendant."

Again, in *People v. Armstrong,* 114 Cal. 570, 46 Pac. 611, the court say: "The court instructed the jury in the language of section 111 of the Penal Code, that a conviction could not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself tends to connect the defendant with the commission of the offense," etc. (This section is the same as ours.) Among other instructions, it also gave the following: "If you are satisfied beyond a reasonable doubt, that the defendant is guilty of the crime charged in the information, it will be your duty to return a verdict to that effect." Appellant argues that the jury might have inferred from this instruction that they could be satis- fied of defendant's guilt by the testimony of Barlow alone. But the court had informed them that evidence corroborative of that of the accomplice was indispensable to conviction, and it must be assumed that this caution was held in mind when the jury came to consider whether defendant was guilty beyond a reasonable doubt. The charge was to be taken as a whole, and it was not necessary that each paragraph should contain all the conditions and limitations expressed in the others; citing *People v. Morine,* 61 Cal. 367, and cases cited; *People v. Leonard,* 106 Cal. 302-304, 39 Pac. 617.

Again, in *People v. Warren,* 130 Cal. 683, 63 Pac. 86, in passing upon an erroneous instruction, the court say: "This instruction was erroneous as held by this court in *People v. Dole,* 122 Cal. 492, 68 Am. St. Rep. 50, 55 Pac. 581. In that case, however, it was held that where other instructions were given by which it clearly appeared 'that merely aiding or as- sisting in the commission of a crime without guilty knowledge is not criminal.' The instructions were to be read together and the error cured."

In *State v. Corcoran,* 7 Idaho, 220, 61 Pac. 1034, at the bottom of page 245, it is said: "The instructions, taken as a whole, informed the jury that they must find from the evidence beyond a reasonable doubt that the defendant acted knowingly and with guilty purpose and intent, and excluded the idea that they could convict because he innocently aided in the perpetration of a crime. While the instructions complained of are in part erroneous, yet no substantial right of the defendant was prejudiced. The instructions, taken as a whole, fairly gave the jury the whole law of the case."

In *Kennon v. Gilmer,* 5 Mont. 257, 5 Am. Rep. 45, 5 Pac. 847, it is said: "They (referring to instructions) must never be considered separately, but each as limiting and interpreting other portions, and if the law is correctly stated, when the instructions are thus considered, the verdict and judgment will not be disturbed." In our opinion the rule established, first in California, and followed by Idaho and Montana with practically the same statutes as enunciated by the quotations from the decisions above referred to, has its foundation in reason, equity and justice.

A number of other errors are assigned with reference to the giving and refusing to give instructions, and the admission of evidence over the objection of counsel for appellant. We will content ourselves by the suggestion that a very thorough and careful inspection of the record in this case fully convinces us that the learned trial judge was careful in guarding every right and interest of appellant throughout the entire trial. It is clear that appellant was given the benefit of every doubt by the court in his instructions (with the one exception, which we do not think prejudiced appellant), and that he repeatedly warned the jury that in their deliberations they must be governed solely by the evidence and not return a verdict of guilty unless they were satisfied, beyond a reasonable doubt, of his guilt from the evidence and the instructions given them.

There is a showing made on behalf of appellant of newly discovered evidence. We have carefully examined this ap-

plication, and if a new trial should be awarded appellant, and he could establish everything claimed in the showing, we cannot see how it would materially aid appellant. As a matter of fact, sufficient diligence is not shown to warrant the court in granting a new trial on this ground, even if it were shown that the introduction of this evidence in another trial might change the result of the last trial. The newly discovered evidence, upon which the new trial is asked, is with reference to a bullet (22-caliber) being found in the east wall of the room in which Daly was killed. The state claim the direction from which the gun was fired was from the southwest. We apprehend the jury in the trial under consideration, and in another one if granted, did and would pay more attention to the bullets that entered the body of the deceased Daly than any that may have entered the walls of the room. It is an undisputed fact that four gunshot wounds were found upon his person and as many wounds upon his head, inflicted by some dull instrument, and that such injuries caused his death. The mere fact that a bullet may have been found in the wall, apparently fired from a different direction than that claimed by the state, would not change the physical facts, nor would it likely result in a change of the verdict in this case. The judgment is affirmed.

Ailshie, J., and Sullivan, J., concur.