LUCAS E. CASTRO, Petitioner and Appellant, *v.* BALBINO GON-
ZÁLEZ, WARDEN OF THE DISTRICT JAIL OF SAN JUAN, De-
fendant and Appellee.

No. 10193.   Argued February 7, 1950.—Decided February 14, 1950.

*Sergio G. Gelpí, B. Sánchez Castaño,* and *Félix Ochoteco, Jr.,* for
appellant.   *Vicente Géigel Polanco, Attorney General,* and
*J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The main question to be decided here is whether the testi-
mony of an accomplice without further corroborating evidence
constitutes probable cause for the commitment of a person un-
der a warrant of arrest issued by a district attorney.

The facts, briefly stated, are the following:

The prosecuting attorney of the District Court of San
Juan issued on December 30, 1949 a warrant of arrest against
Lucas E. Castro, charging him with the commission of eight

crimes of murder and two of attempt to kill and fixing bonds in the amounts of $30,000 and $20,000 in each case of murder and attempt to kill, respectively.[1]   Not having furnished said bonds, Castro was imprisoned and on the ground that there is no probable cause for his arrest he filed a petition of habeas corpus in the lower court.

At the hearing the district attorney, in order to justify petitioner's arrest, introduced the following evidence:

"1. Deed of Mercantile Partnership executed on June 10, 1944 by Don Lucas E. Castro Anguita and Miguel A. Palóu Márquez, before Notary Emilio Díaz Santana whereby both parties agree to constitute a limited mercantile partnership, Lucas E. Castro being the silent partner·and his contribution, SIX THOUSAND DOLLARS ($6,000).

"2. Sworn testimony of Luis R. Díaz, photographer of the Insular Police, to the effect that he had taken pictures of eight (8) cremated bodies from the building set fire to on 300 Allen

---

[1] Said order reads as follows:

"THE PEOPLE OF PUERTO RICO, To the Warden of the Jail of San Juan, P. R.

"An order having been entered by this Court on this day for the arrest of LUCAS E. CASTRO ANGUITA to answer for the charges brought against him of 8 MURDERS IN THE FIRST DEGREE AND 2 ATTEMPTS TO KILL, in that acting in common in a plan preconceived with Miguel Palóu Márquez and with Miguel Cirilo Batalla Suere, on December 15, 1949 and in San Juan, P. R., unlawfully with malice aforethought, and with fixed and deliberate intent to kill, showing a perverted and malignant heart, in the prosecution of said plan and because he committed with the other two defendants, with his cooperation, aid, advise, favor, and coercion, arson in the first degree, he unlawfully killed the human beings Antonio Rosa Requena, Josefa Almodóvar Vázquez, Rosa Julia Maurent de Sandín, Adela Margarita Maurent Almodóvar, Francisco Rosa Sánchez, Noemí Franceschi Rivera, Jorge Sandín López, and Betty Rosa or López; and attempted to kill together with the other two defendants, the human being América López de Rosa and Francisco Casanova Figueroa, without being able to kill them, and I advise you that I have fixed a bond of $30,000 in each case of murder and of $20,000 in each case of attempt to kill, which bonds amount in total to $280,000 in order to remain at provisional liberty; you are hereby ordered to take him into custody and hold him until he be legally released."

"Given under my hand this 30th day of December, 1949.

"Sgd. Angel Viera Martínez
District Attorney."

Street of San Juan, Puerto Rico in the first floor of which the business of Miguel A. Palóu & Company was located, the second and third floors being occupied by families on the date of the disaster, that is, December 15, 1949, at dawn."

Nos. 3 to 10 inclusive, photographs of eight cremated bodies.

"11. The testimonies of Miguel A. Lebrón, Rafael Roberto Muñiz Ríos, Alejandro Sandín López, Eliezer Enrique Rivera Rodríguez, Domingo Rodríguez Almodóvar, and José Antonio Franceschi Vargas, each of them identifying the bodies mentioned in Exhibits from three (3) to ten (10)."

12 and 13. Medical certificates regarding to the wounds received by América López de Rosa and Francisco Casanova.

14. Letter from Dr. Enrique Koppisch including certificates regarding the autopsies performed on the eight bodies.

"15. Sworn testimony of Doña América López widow of Rosa given before District Attorney Angel Viera Martínez on December 21, 1949 regarding the disaster which occurred on December 15, 1949, at dawn, and

"16. Sworn testimony of Miguel Cirilo Batalla y Suere confessing to being the actual originator of the fire and describing the latter."

The petitioner admits that Batalla's testimony implicates him in the commission of the crimes charged.

Based on this evidence the lower court dismissed the petition maintaining: (1) that the testimony of an accomplice connecting the person imprisoned with the commission of the offense, sufficiently shows probable cause for an arrest, and (2) that in the present case there is a scintilla of corroborating evidence, to wit: "the deed of mercantile partnership executed on June 10, 1944 showing the interest of Lucas E. Castro, the petitioner, in the textile business of Miguel A. Palóu & Co." With respect to this second point the court also said: "We consider that this scintilla of corroborating evidence does not comply with the requisite that, aside from the testimony of the accomplice it connects the petitioner with the commission of the offense, but it is a sign which together with the testimony of the accomplice shows that there was probable cause for petitioner's arrest."

Petitioner appealed and herein charges the lower court with the commission of several errors, but in view of our conclusion we believe that the basic question to be decided is that set forth at the beginning of this opinion and we shall confine ourselves thereto.

We shall discuss in the first place the second point indicated by the lower court as to the scintilla of evidence in regard to the deed of partnership. Said deed, executed in 1944, that is, five years prior to the fire in the store of Palou & Co. and in which appellant appears as silent partner of Miguel A. Palóu & Company, *Sociedad en Comandita*, can in no way be considered by itself alone as corroboration of the testimony of the accomplice Batalla nor as proof of a sign which coupled to said testimony, tends to show probable cause for appellant's arrest. To be a silent partner in a mercantile partnership, only proves that fact. However, we can not accept that that fact alone is an indication that said partner took part in the commission of the offense without further evidence, independent of that of an accomplice, which connects him in any way whatsoever with the commission of the offense. The existence or nonexistence of probable cause for appellant's arrest is therefore justified or not by the only incriminatory evidence, that is, the testimony of the accomplice Batalla. Is said testimony alone sufficient to support the existence of probable cause? [2]

Section 253 of the Code of Criminal Procedure provides that:

"A conviction can not be had on the testimony of accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the

---

[2] Subdivision 7 of § 483 of the Code of Criminal Procedure provides that a prisoner may be discharged by virtue of a writ of habeas corpus: "Where a party has been committed on a criminal charge without reasonable or probable cause."

corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

Appellant admits (a) that the writ of habeas corpus may not be invoked to determine whether the defendant is guilty or not guilty, *People* v. *Pillot*, 19 P.R.R. 250; *Ex parte Baigés*, 26 P.R.R. 135, and (b) that the prosecuting attorney has only to prove that he has obtained a scintilla of evidence to justify the imprisonment of the defendant in order that the petition be dismissed, *Waldin* v. *Feliciano*, 62 P.R.R. 202; *Ex parte Anés Pillot, per curiam* decision, 58 *D.P.R.* 948; *Ex parte Pagán*, 46 P.R.R. 886. However, he maintains that. said scintilla of evidence must be sufficient to justify "that there is a probability, or fair probability, that the case may be submitted to the jury, for its verdict", as we decided in *Ex parte Vega*, 46 P.R.R. 476.

Even though the question raised here has not been expressly discussed or examined by this Court, we have indirectly indicated which would be our view in case we were met with the unavoidable necessity of deciding it.

In *Ex parte Alers et al.* v. *The People*, 22 P.R.R. 288, Alers and two others were arrested, being charged with the crime of arson. They petitioned for habeas corpus on the ground that there was no probable cause for their detention and upon the writ being denied by the District Court of Aguadilla, they appealed to this Court. Upon examining the evidence and in deciding the case we said:

"*Even granting that the testimony of Ramón Ramírez, being that of an accomplice, is not of itself sufficient to show the existence of probable cause for the arrest of a person as one of the principals in the same crime, we understand that as his testimony was corroborated on some points by Juan González Avilés,* as appears from the details testified to by him, *it cannot be held that the petitioners are imprisoned without probable cause for the commission of the crime with which they are charged.* Whether the testimony of the accomplice *has been sufficiently corroborated to warrant a conviction of the petitioners* is a question to be decided at the trial and not in *habeas corpus* proceed-

ings, in which no person should be liberated unless there is absolutely no evidence to justify his imprisonment." (Italics ours.)

The next case involving the same question was *Forastieri* v. *Calzada*, 53 P.R.R. 238, in which it appears that Forastieri was arrested for bribe-giving in that he had given money to several witnesses for the People in a prosecution for murder against him, attempting to induce them to alter their testimonies. On the ground that there was no probable cause for his detention, Forastieri filed a certain writ of habeas corpus and when it was denied he appealed to this Court. In support of the allegation that there was probable cause, the district attorney had introduced the testimony of witness Quintero, one of the persons who had accepted the bribe. In deciding the case we said:

"Did the district attorney in the instant case show the existence of that probability?

"The appellant insists that he did not. He argues that the only evidence introduced consisted in the declaration of an accomplice and, as section 253 of the Code of Criminal Procedure (1935 ed.) provides that a conviction can not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, it is manifest that there was no evidence nor a scintilla of evidence to justify his imprisonment.

"*If Quintero was really the accomplice of Forastieri, the latter would be right. Was he such? . . .*" (Italics ours.)

In order to answer the question, the Court examined §§ 131 and 132 of the Penal Code dealing with Bribing Witnesses and Witnesses Receiving Bribes, respectively, and after an examination of the law and the decisions applicable to both Sections, it answered the question in the negative, that is, that Quintero was not Forastieri's accomplice inasmuch as the witness accepting a bribe commits a crime different from the one committed by the person attempting to bribe him and we said at page 247:

"As Manuel Quintero was not an accomplice, therefore his testimony is sufficient to show that there existed probable cause for the detention of Forastieri and consequently that the trial court did not commit the error attributed to it."

There is no doubt that in *Ex parte Alers*, *supra*, we did not decide anything final on this question. However, the statement in the *Forastieri* case is more than a mere dictum. We decided affirmatively that "If Quintero were in fact Forastieri's accomplice, the latter would be right." Right as to what? Why, as to the only question raised therein, to wit, that the testimony of an accomplice without corroboration is not probable cause for the arrest of a person implicated by the accomplice in the commission of the offense. So much so, that in order to decide that there was probable cause for Forastieri's detention, this Court was compelled to reach the conclusion that Quintero was no such accomplice and that hence his testimony was sufficient to establish probable cause.

Accepting, however, that in the opinion in *Forastieri* v. *Calzada*, *supra*, the first finding to the effect that if Quintero was in fact Forastieri's accomplice, "the latter would be right," was not discussed, nor were grounds given or cases cited in support thereof, we shall now state why we believe that said conclusion should be established as a doctrine in cases of this nature in this jurisdiction.

If as we decided in *Ex parte Vega*, *supra*, cited with approval in the *Forastieri* case, in a habeas corpus proceeding filed for lack of probable cause, it is not necessary for the prosecution to make out a complete case for a conviction but only that there is a fair probability that the case may be submitted to the jury for its verdict, could the present case be submitted to the jury on the uncorroborated testimony of the accomplice Batalla? Of course not, and it is so admitted by the *Fiscal* of this Court. It might be argued that possibly the district attorney has obtained other evidence in corroboration of said testimony or that he might be able to get it prior to the trial. These possibilities, however, do not

justify that a person be arrested and incarcerated since the uncorroborated testimony of the accomplice is not, in our judgment, sufficient proof of probable cause. If under the terms of § 253, *supra,* a defendant may not be convicted on that testimony alone, neither should a person be imprisoned on that evidence alone. The freedom of a citizen as well as his conviction of a crime should not depend on the isolated imputation of an accomplice whose declaration is sometimes obtained in order that he may be used as a witness for the prosecution—§ 239 of the Code of Criminal Procedure—and thus obtain his acquittal. Section 241 of the Code of Criminal Procedure. In order to achieve this, of course, the district attorney must have corroborating evidence and if he has it, we see no reason at all why he should not be compelled to present some part thereof to establish probable cause. In reaching an identical conclusion upon construing a provision similar to that of our § 253, in *State* v. *Smith,* 138 Ala. 111, 35 So. 42, the Court expressed itself thus:

". . . in our opinion, its effect is to stamp a policy upon the administration of the law in this connection which cannot be carried out unless it be given operation upon cases where the inquiry is probable cause *vel non,* as well as where the inquiry is as to absolute guilt. The statute infects the testimony of accomplices with such absolute infirmity as that not only may the citizen be not convicted upon it, but as also that he should not be deprived of his liberty in anticipation of a final trial upon it. A consideration of practicabilities in the administration of the criminal law, so to speak, would seem to enforce the same conclusion. Why should the citizen be held to the grand jury, or indicted by the grand jury on testimony upon which no petit jury could possibly convict him? What good end could be served by such a proceeding? Can there be said to be even probable cause shown in any case by testimony which the law expressly and positively declares to be insufficient to support a conviction? We think not. . . . To hold him would be a vain and useless thing, involving his incarceration not as a punishment for crime and not really to the end that he should be tried for a crime

charged of his probable guilt of which there is evidence to prove, but at the best upon a mere speculation that evidence may be found to corroborate that of the accomplice. . . ."

The same conclusion was reached in *Ex party Oxley*, 149 Pac. 992 (Nevada, 1915).

In California, from where our Code of Criminal Procedure is derived, § 253, *supra*, being identical to 1111 of the Penal Code of said State, the contrary has been held. The first case cited and which we have found wherein the question was incidentally decided was *In re Mitchell*, 1 Cal. App. 396, 82 Pac. 347 (1905) and expressly in *Ex parte Schwitalla*, 36 Cal. App. 511, 172 Pac. 617 (1918), which was ratified in *People* v. *McRae*, 187 P. 2d 741 (1947). Such decisions were based on the construction given to said § 1111 to the effect that the corroboration of an accomplice is necessary only for the "conviction" of the defendant and not to determine whether there is probable cause for his preliminary detention. Since these decisions are subsequent to the year 1902 in which the Code of Criminal Procedure of Puerto Rico was approved, it· can not be said that in· adopting § 253, *supra*, we did it aware of their construction and that we should follow them. *People* v. *Fuente*, 14 P.R.R. 109; *People* v. *Colón*, 15 P.R.R. 663. They could have only the persuasive force of the reasonings on which they were based. *People* v. *Pérez*, 59 P.R.R. 455. The reasoning of the California courts does not convince us with such persuasive force that we must adopt it. Neither was it a unanimous court which decided the latter case in the Supreme Court of California (the other cases had been decided by intermediate courts) in *People* v. *McRae*, *supra*, for there were two dissenting votes. Mr. Justice Schauer, in his dissenting opinion, upon referring to the uncorroborated testimony of an accomplice, stated in part as follows:

". . . Such testimony, uncorroborated, was wholly incompetent for the proof of any fact (Authorities) ; standing uncorrob-

orated the status of the case as to proof of guilt, probable cause, or any other fact is exactly the same as though no evidence whatsoever had been adduced.

"The majority opinion errs, therefore, in applying the preliminary hearing rule as to quantum or persuasiveness of proof to a situation where there is *no* proof. I have no quarrel with the rule itself, which is that in a preliminary examination proceeding it is not necessary that a defendant be proved guilty beyond a reasonable doubt; that it is sufficient to warrant binding him over for trial if upon the proof it is reasonable to believe that the defendant is guilty of the offense charged (Authorities). Under this rule, even though the committing magistrate may view the testimony of an accomplice with caution, suspicion and doubt, he may legally, if the accomplice's testimony is corroborated, hold the defendant to answer. But if the testimony of the accomplice is left wholly uncorroborated and there is no other evidence of guilt then there is no competent evidence at all upon which the order of commitment can be based.

". . . . . . . .

"There is no satisfactory basis for holding that evidence which, in the accumulated wisdom of the law, is wholly incompetent to prove any fact in the superior court, or to be considered at all therein, shall be received and accepted as the sole and complete proof of every essential fact in the committing court. Again, I emphasize, we have here no question as to quantum or degree of proof; we have a total absence of any proof. . . ."

If the only evidence in possession of the district attorney herein as to appellant's participation in the crimes charged, is the testimony of the accomplice Batalla, what probable cause exists that the case might be submitted to the jury? None in our judgment, inasmuch as he would have to be peremptorily acquitted by the court. To reject the rule that a citizen may be deprived of his liberty under a warrant of arrest issued by a prosecuting attorney pursuant to the testimony of an accomplice without corroboration constitutes no danger at all for society. If the prosecuting attorney lacks such corroborating evidence, he will never be able to obtain a conviction after trial and he should not be permitted to indefinitely

.deprive a citizen of his freedom. We take judicial notice of the delay first in the filing of the informations and later during the trials in our district courts and especially in those cases like the present in which there are several defendants. In the impossibility of furnishing the bond fixed, the bonds here total $280,000,[3] a rule should not prevail which depends on the anticipation that the prosecuting attorney may, with the lapse of time, obtain the necessary corroborating evidence to make out his case. To accept the rule established in California [4] would be to give to the isolated testimony of an accomplice a probatory value denied thereto by law, for said testimony, by itself alone, is no evidence against the person arrested or the defendant. It would be to place in the hands of a defendant the power to implicate anyone, because of hatred or convenience, in the commission of the offense with which he is charged, and in this manner obtain his commitment without the prosecuting attorney being compelled to show that he has any other corroborating evidence connecting him with the commission of the offense and thus establish probable cause for his arrest.

We believe that the ends of justice are better served by insuring the freedom of a citizen, in this case appellant's, against imprisonment based exclusively on the uncorroborated testimony of an alleged accomplice. We say "alleged" be-

---

[3] The fact that the appellant is charged with eight murders and two attempts to kill does not justify, in our judgment, that bonds be fixed at such a high figure that they do not serve the purpose which the lawmaker had in mind when he required them, that is, that the person arrested "will appear and answer" the information against him—§ 378 of the Code of Criminal Procedure—or to answer it once it has been formulated, § 385 of the same Code. Furthermore, § 2, paragraph 12 of our Organic Act provides that "excessive bail shall not be required."

[4] New York, Minnesota, and Oklahoma have established the same rule. See *Ex parte Eason*, 282 Pac. 684 (Okla., 1929); *State* v. *Jeffrey*, 300 N.W. 7 (Minn., 1941); *In re Dempsey*, 65 N.Y.S. 717; *People* v. *Munro*, 268 N.Y.S. 404 (1934). It should be noted that in all of these cases and those of California, a committing magistrate holds the defendant for the grand jury. In Puerto Rico, it is the District Attorney who orders the arrest and then accuses.

cause as long as there is no corroboration, appellant has not been connected at all with the crimes charged against Batalla and Palóu.

The judgment appealed from will be reversed, the writ of habeas corpus granted and the appellant set free.

MR. JUSTICE SNYDER dissenting with whom MR. JUSTICE NEGRÓN FERNÁNDEZ concurs.

I agree that the record contains no evidence connecting Castro with the crimes charged except the confession of Batalla, his alleged accomplice. I also agree that if the *Fiscal* offers no additional testimony at the trial, Castro must be acquitted. This is because § 253 of the Code of Criminal Procedure, 1935 ed., provides that "A conviction can not be had on the testimony of accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense . . ."

But we are not concerned here with the problem of whether Castro is guilty or innocent. That can be determined only after he is accused and tried, and neither of these events has taken place. Castro is being detained because he has failed to furnish a bond pursuant to a warrant of arrest. And we have before us only a petition that Castro be discharged from custody by a writ of habeas corpus. On that issue the *Fiscal* is not required to establish Castro's guilt. Under § 483 of the Code of Criminal Procedure he need only prove that there is probable cause for Castro's arrest in anticipation of the filing of an information.

Section 253 of our Code of Criminal Procedure does not say that a defendant may not be *arrested* or *accused* without evidence corroborating the testimony of an accomplice. On the contrary, it provides only that *a conviction* may not be had without such corroboration. I therefore fail to see on what basis we can say that under §§ 253 and 483 corroboration is required to justify *arrest*.

I do not stand alone on this proposition. As the majority opinion concedes, four of the six cases in other jurisdictions cited to us on this point support my position. In commenting on these cases in footnote 4, the opinion of this Court notes that in those four states a committing magistrate holds a defendant for the grand jury, whereas in Puerto Rico the district attorney orders the arrest and then accuses. But it is for the Legislature to determine which of these two methods of arrest and accusation shall be utilized in Puerto Rico. I do not believe that the choice it has made has any effect whatsoever on the plain meaning of § 253. In this jurisdiction, where the source of our criminal law is wholly statutory, I would follow the majority view that the language of § 253 means what it says, and that corroboration is required only for conviction, and not for arrest.

Under my view of the law, this is a simple case. It is conceded that Batalla's confession implicates Castro. I would therefore hold that no corroboration of the confession is required at this stage of the case and that the confession constitutes a sufficient showing of *probable cause* to justify the *arrest* of Castro. Whether he is guilty or not depends on the testimony adduced at the trial, where corroboration will be required.

I need hardly add that when arrested a defendant is entitled to be released on reasonable bond. And the total amount of the bonds fixed in this case leads me to observe that the *Fiscal* is authorized to fix bond in an amount which will guarantee the presence of the defendant at the trial. He is not authorized to fix a bond at such a high figure that it could have no purpose except to force the defendant to remain in jail pending trial.