[No. 10,668.—In Bank.]
Aug. 30, 1882.

## THE PEOPLE *v.* ANTOINE MORINE.

Murder — Justification — Apparent Necessity. — The defendant was charged with murder, and on the trial the Court instructed the jury:

1. "To justify a person in killing another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

2. "To constitute murder in the first degree it is only necessary that the act of killing be preceded by, and the result of a concurrence of will,

deliberation, and premeditation on the part of the slayer. There need be no appreciable space of time between the intent to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind."

3. "The killing being shown in a given case, if it appears that the killing was willful, deliberate, and premeditated, it constitutes murder in the first degree."

But the Court elsewhere instructed the jury, in effect, that the justification is complete where there is a reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, or to justify him in the belief that such danger exists, or to create a reasonable apprehension that he, the defendant, was about to suffer great bodily injury; that in such case the defendant had the right to act upon such appearances, and to kill the deceased, if necessary, to avoid the apprehended danger; and under such circumstances the killing would be justifiable, although it may afterwards turn out that the appearances were false, and there was in fact neither design to do him a serious injury nor danger that it would be done. And the Court also, in its definition of the crime of murder, instructed them fully that the killing must be with malice in order to make it murder.

*Held:* While some of the instructions are perhaps subject to criticism and may not state the law with accuracy, yet, taken as a whole, they were substantially correct, and could not have misled the jury to the prejudice of the defendant. It is not necessary that each instruction should fully state the law of the case, but any instruction may be helped out and explained by another on the same point; and in such a case the Court will look to all the instructions in *pari materia* for the purpose of determining whether the law has been correctly given.

ID.—EVIDENCE—REPORTER'S NOTES—IMPEACHMENT OF WITNESS.—For the purpose of impeaching B., a witness for the prosecution, the witness D. was introduced by the defendant, who testified as to what the witness B. swore to on the former trial in reference to certain points; and the defendant, also for the same purpose, read in evidence the reporter's notes of a portion of the testimony of B. on a former trial, after the reporter had testified that it was a correct transcript of B.'s testimony. Afterwards, for the purpose of contradicting the evidence of D., the prosecution were permitted to read in evidence, over the objection of the defendant, the portion of the reporter's transcript of B.'s evidence that referred to the points in his evidence as to which D. had testified. *Held:* There was no error.

ID.—EXPERT—DRUNKENNESS—IMMATERIAL ERROR.—The Court refused to permit the defendant to ask a witness the following question with reference to a witness for the prosecution: "I will ask you if in your opinion Waite was in a condition to intelligently see any difficulty and afterwards relate it?"

*Held:* It is unnecessary to determine how far the testimony of experts is admissible on the question of drunkenness, or whether the particular question objected to was a proper one, for the reason that the defendant was not injured by the refusal of the Court to allow the question, as he elsewhere fully testified on the same point.

APPEAL from a judgment of conviction and from an order denying a new trial in the Superior Court of the County of Yolo.  BUSH, J.

*E. A. Bridgford* and *J. C. Ball,* for Appellant.

*A. L. Hart,* Attorney General, for Respondent.

MORRISON, C. J.:

The first error assigned on this appeal is founded upon the following instructions given to the jury, which it is claimed by the defense were erroneous:

1. " To justify a person in killing another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

2. "To constitute murder in the first degree it is only necessary that the act of killing be preceded by, and the result of a concurrence of will, deliberation and premeditation on the part of the slayer.  There need be no appreciable space of time between the intent to kill and the act of killing.  They may be as instantaneous as successive thoughts of the mind."

3. "The killing being shown in a given case, if it appears that the killing was willful, deliberate and premediate, it constitutes murder in the first degree."

The objection made to the first instruction referred to above is, that the jury were told that the defendant had no right to act upon an apparent necessity, but the necessity must have been actual; and that it entirely ignores the well-settled doctrine that a defendant in a criminal case is justified in killing his assailant, when the facts and circumstances connected with the homicide are of such a character as to create a *reasonable and well-founded belief* of actual danger and necessity.  It is claimed that the instruction given was disapproved by this Court in the case of *People* v. *Flahave,* 8 Pac. C. L. J. 47, and it may be conceded, for the purpose of this case, that

the position taken by the learned counsel for the defense is correct. But it does not follow therefrom that the judgment of the Court should be reversed. If other instructions were given which qualify and explain the objectionable instruction, the whole charge will be considered, and if, as a whole, it correctly presents the law applicable to the case, the judgment will not be reversed. In other words, it is not necessary that each instruction should *fully* state the law of the case; but an instruction may be helped out and explained by another, on the same point; and in such a case the Court will look to all the instructions *in pari materia* for the purpose of determining whether the law has been correctly given to the jury.

In the case of *People* v. *Bagnell,* 31 Cal. 409, it was held that in order to determine the correctness of the charge of the Court to the jury in a criminal case, its different parts must be considered in their relations to and with each other. In the case of *People* v. *Dennis,* 39 Cal. 629, the Court says: "The defendant is not prejudiced by instructions, some portions of which, taken by themselves, may be objectionable, but as subsequently qualified, embrace a correct exposition of the law upon the points presented." And in the case of *People* v. *Cleveland,* 49 Cal. 577, the law on this subject is stated as follows: "While some of the instructions are perhaps subject to criticism, and may not state the law with precise accuracy, yet, taken as a whole, they were substantially correct, and could not have misled the jury, to the prejudice of the defendant." There is another case on this subject in which we find the following language of Mr. Justice McKinstry, in delivering the opinion of the Court: "We must take the charge together, and if without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text." (*People* v. *Doyell,* 48 Cal. 85.)

We will proceed to examine other instructions given by the Court on the question of justifiable homicide, and see if they do not, as a whole, correctly present to the jury the law on that subject. Instruction four given by the Court to the jury is in the following language:

"Homicide is justifiable when committed by a person in either of the following cases:

"1. When resisting any attempt to murder any person or to commit a felony, or to do some great bodily injury upon any person.     *     *     *

"3. When committed in the lawful defense of any such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, where there is *reasonable ground* to apprehend a design to commit a felony or to do some great bodily injury, etc.     *     *     *     A bare fear of the commission of any of the offenses mentioned in the second and third subdivisions of the last instruction, by Gardner, to prevent which the defendant would have been justified in inflicting the wound on Gardner, is not sufficient to justify defendant. But the circumstances must have been sufficient to have *excited the fear of a reasonable person,* and defendant must have acted under the influence of such fear."

Instruction 15. "A man can not, in any case, justify killing another by a pretense of necessity, unless he was wholly without fault in bringing about that necessity. A man has a right to defend himself against a sudden and unexpected assault by another; but if that assault does not seriously injure him, or contain in itself, circumstances of imminent danger or injury to him, and the circumstances in which he is placed by it are insufficint to *justify him in the belief* that such danger exists, he has no right to take advantage of the opportunity, which such an assault gives him, to slay his assailant."

The foregoing instructions were given at the instance of the prosecution, and, afterwards, the following on the same subject were given at the request of the defendant:

"If you find from the evidence that the defendant inflicted a wound upon deceased, from which deceased died, and that such wound was inflicted by defendant in the lawful defense of his person, or when there was *reasonable ground* for defendant to apprehend a design on the part of deceased to do defendant some great bodily injury, and imminent danger of such design being accomplished, then the jury are instructed that defendant was justifiable, and you must find him not guilty."

"The jury are instructed that in determining the question as to whether there were *reasonable grounds* for the defendant to *believe* that the deceased intended to inflict some great bodily injury upon the person of the defendant, they should not only take into consideration all the circumstances surrounding the difficulty which resulted in the death of the deceased, but they should also consider any feelings of bitter enmity on the part of deceased towards the defendant, and which defendant knew to exist; and also any threats of violence that may have been made by deceased against defendant, and which had been communicated to defendant."

"The jury are instructed that if the deceased assaulted the defendant under such circumstances as to *create a reasonable apprehension* that he, the defendant, was about to suffer great bodily injury, the defendant had a right to act upon such *appearances* and to kill the deceased if necessary to avoid the *apprehended* danger, and under such circumstances the killing would be justifiable, although it might afterwards turn out that the appearances were false, and there was in fact neither design to do him serious injury, nor danger that it would be done."

Applying the above rule, well established by the decisions in this State, to the charge given by the Court in this case, we find that as a whole it correctly presents the law of justifiable homicide, although it may be admitted that one instruction, standing alone, does not "contain all the conditions and limitations which are to be gathered from the entire text." And the same may be said with reference to the other two instructions to which our attention has been directed. The instructions omitted the element of *malice,* and spoke of a killing, willful, deliberate, and premeditated; but the Court in its definition of the crime of murder, told them that the killing must be with malice, in order to make it murder.

2. The next point relates to the admission in evidence of the reporter's notes. It is claimed on behalf of the defendant that the notes of the short-hand reporter were not certified as correct. It appears, however, from the transcript in the case, that the reporter was called as a witness *by the defendant,* and upon his examination in chief testified, that he took down the testimony of Britt in short-hand, and transcribed it into long-

hand; that "the paper" (his notes of the evidence) "was a correct transcript of G. L. Britt's testimony as given in the last trial in Colusa." An effort had been made by the defense to impeach the witness, Britt, by showing that he had testified on a former trial of this case to a state of facts different from that stated by him on the second trial. This testimony of the reporter (Transcript, p. 74) was given on the part of the defendant in making out his defense, and a portion of the deposition referred to by said reporter was used by the defendant for the purpose of showing that the witness, Britt, had made a different statement in some points from that made upon the present trial; but such deposition was not used, nor was any portion of it introduced by the defendant upon the points in reference to which the witness DeLap (the impeaching witness) testified. Thereupon the prosecution "offered the deposition on the point as to the moving off from the east end of the bar, as to the position the parties occupied, and the prosecution was permitted to read in evidence that part of the deposition which tended to contradict DeLap, and to corroborate the witness Britt's statement on this trial." It will appear from an examination of the evidence of the witness DeLap, found in the transcript, that he testified to what the witness, Britt, swore to on the former trial in reference to the position of the parties, the deceased, and the defendant, and their movements at the time the homicide was committed, and it was that part of the deposition of Britt which related to these facts; that the prosecution was allowed to read in evidence. In this we think there was no error.

3. The third alleged error grows out of the refusal of the Court to permit the witness Cunningham to answer the following question:

"I will ask you if, in your opinion, Waite was in a condition to intelligently see any difficulty and afterwards relate it?"

The witness Waite had been called for the prosecution and had testified to the circumstances attending the homicide, and Cunningham had testified that he had a great deal of experience with drunken men. The question was objected to by the prosecution, and the objection was sustained by the Court.

It is not necessary for us to determine how far the testi-

mony of experts is admissible on the question of drunkenness or whether the particular question objected to was a proper one or not, for the simple reason that the defendant was not injured by the refusal of the Court to allow the question, as will appear from an examination of the transcript. Cunningham was asked: "What was his condition for sobriety? Ans.—I considered him drunk. Q.—How drunk? Ans.—So drunk I could get nothing from in the case at all. Q.—What effort did you make to find out from Waite, what had occurred there? Ans.—I considered him so drunk that I did not make much effort. I did not consider I could find out much from him. Q.—You undertook to talk with him, and found him drunk? Ans.—Yes, I went up to the bar; he was there and had his hands on his chin."

What has been said with reference to the witness Waite applies with equal force to the witness Watkins. Cunningham testified fully as to the condition of each of them, and if he had been allowed to answer the questions objected to no greater weight would have been imparted to his evidence. Conceding, therefore, for the purpose of the argument, that the witness should have been permitted to answer the questions objected to, we are clearly of the opinion that the defendant's case was not prejudiced by the action of the Court in sustaining the objections to them.

The record shows no error for which the judgment should be reversed, and the judgment and order are affirmed.

McKee, Thornton, Ross, Myrick, and McKinstry, JJ., concurred.