Filed 6/20/22  P. v. Casillas CA2/7

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. FRANCISCO JAVIER CASILLAS, Defendant and Appellant. | B306934 (Los Angeles County Super. Ct. No. KA098865-02) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Remanded with directions.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

# INTRODUCTION

A jury convicted Francisco Javier Casillas of three counts of attempted premeditated murder, three counts of assault with a semiautomatic firearm and one count of carrying a loaded firearm while an active gang member. The jury also found true the allegations supporting firearm and gang enhancements. Casillas appealed, asserting instructional, sentencing and cumulative errors.

During the pendency of his appeal, the Legislature amended various statutory provisions governing gang enhancements and the requisite proof for gang-related crimes. The parties agree Casillas is entitled to the retroactive benefit of certain of these changes, necessitating the vacatur of his conviction for carrying a loaded firearm while an active gang member and other gang enhancements. The parties also agree the trial court erred in imposing a 15-year minimum parole eligibility period on the attempted murder counts.

We vacate the gang enhancement findings, vacate the firearm enhancement findings under section 12022.53 (but not the firearm enhancements on the aggravated assault counts), strike the 15-year parole eligibility minimum, reverse the gang crime conviction and remand to provide the People an opportunity to retry the enhancements and the gang crime count pursuant to these new statutory requirements. If the People elect not to retry Casillas, the trial court shall resentence him accordingly. We otherwise affirm Casillas's conviction for attempted murder and assault.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Casillas and His Friend Open Fire in a Liquor Store Parking Lot*

On the evening of July 4, 2012, Casillas and his friend Raymond Montanez went to a liquor store in the City of Pomona to buy beer. While they were inside, the store's external surveillance cameras captured a silver sedan pulling into the parking lot and parking to the right of Casillas's dark sedan. As Casillas and Montanez exited the store, they walked in front of the silver sedan as they headed to Casillas's car. Montanez got into the front passenger seat, and Casillas got into the driver's seat of his car. Three unidentified men (Does 1-3) exited the silver sedan and began walking in the direction of the store before turning toward Casillas's car as it was reversing out of its parking spot. Montanez's window rolled down, and some sort of exchange, verbal or visual, transpired between Montanez and the Does. Casillas stopped his car when it was nearly perpendicular to, and blocking, the parked silver sedan. Both Casillas and Montanez got out. Casillas walked toward the back of his car, while Montanez exited on the passenger side, which was closest to the Does and their vehicle. The Does began backing away from Casillas and Montanez, toward the liquor store, and moved behind the passenger side of their own car. What happened next occurred quickly and was captured on the liquor store surveillance video camera in granulated pixelation, without audio. The critical details were vigorously contested between the parties at trial and remain so on appeal.

At trial, Casillas's attorney asserted Doe 1 pulled a gun and "point[ed] that gun in the direction of either Montanez or Casillas" and Casillas fired to defend himself and Montanez "from being shot and possibly killed." The prosecutor posited

3

that Casillas and Montanez implicitly or verbally agreed, while still in the car, that "they were about to get into a gunfight" and then "[Casillas] walks around the rear of his car and immediately opens fire." On appeal the People suggest that Doe 1 "pointed toward" Montanez and Montanez ducked down.

What is undisputed is that Casillas and Montanez collectively fired 15 rounds from their .40 caliber semiautomatics in a matter of seconds as Does 1 and 3 dove for cover behind the silver sedan and Doe 2 ran away. Casillas and Montanez promptly jumped back into Casillas's car and sped away. Doe 1 began shooting, firing a total of 14 rounds from a .9 millimeter semiautomatic firearm at Casillas's fleeing vehicle. All three Does got into and then quickly exited their sedan before Does 1 and 3 ran from the parking lot. Doe 2 surveyed the sedan's exterior and drove away.

Meanwhile, inside the store, Atalla Trad was working as a clerk. Trad heard what he believed to be the sound of fireworks until he looked and saw his arm dripping with blood from a gunshot wound. Paramedics transported Trad via ambulance to the hospital, where he spent 10 days and received five surgical staples in his arm.

Approximately six years later, in 2018, Casillas was arrested in Hawaii and extradited to California.

*B. Casillas Is Charged, Tried, Convicted and Sentenced*

In March 2020 the Los Angeles County District Attorney filed an eight-count[1] amended information charging Casillas with carrying a loaded firearm while an active street gang member

___

[1] For purposes of the verdict forms at trial, counts 2 through 9 were listed as counts 1 through 8.

4

(Pen. Code,[2] § 25850, subd. (a); count 2), attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a); counts 3-5), assault with a semiautomatic firearm (§ 245, subd. (b); counts 6-8) and shooting at an occupied building (§ 246; count 9). As to counts 3, 4 and 5 it was further alleged that a principal personally and intentionally discharged a firearm, which proximately caused great bodily injury to Trad (§ 12022.53, subds. (b)-(d), (e)(1)). Regarding counts 6, 7 and 8 it was further alleged Casillas personally used a firearm in the commission of the offenses (§ 12022.5, subd. (a)). Finally, for all counts, it was alleged the offenses were committed for the benefit of the gang (§ 186.22, subds. (b)(1)(A), (b)(1)(C), (b)(4)). Casillas pleaded not guilty and denied the special allegations.

At trial,[3] Detective Andrew Bebon, a veteran of the Pomona Police Department, testified as an expert on criminal street gangs in the City of Pomona. Bebon identified Casillas and Montanez on the liquor store surveillance videos and opined Casillas and Montanez were "absolutely" members of a criminal street gang known as the Pomona 12th Street Sharkies and had the gang monikers of "Lil Cisko" and "Drunx" respectively.[4] According to Bebon, the Sharkies are predominately Hispanic and the oldest

---

[2] Undesignated statutory references are to the Penal Code.

[3] Montanez was separately arrested and taken into federal custody; he was not tried with Casillas, nor did he testify at Casillas's trial. The jury was instructed not to speculate as to his absence.

[4] Casillas's trial counsel conceded Casillas "associated with members of 12th Street Sharkies" and was "not going to challenge" the testimony that Casillas was a gang member.

5

gang operating in Pomona, dating back to the 1940's. Their primary activities include the sale and distribution of narcotics, extortion and engaging in acts of violence for the purpose of instilling fear and intimidation in the community and amongst other gangs in order to reinforce their reputation and control their geographic area. Bebon testified the liquor store was on the edge of the Sharkies' territory, bordering that of their bitter rival Olive Street, another Hispanic gang. In Bebon's opinion, if members of these two rival gangs encountered one another in public, he would expect whoever is "strapped" (carrying a firearm) to start shooting. Bebon further opined that if a gang member goes unarmed into enemy territory, or close to it, he or she is said to be "caught slippin'"—a situation gang members typically avoid so as not to be murdered. Bebon testified Casillas and Montanez were part of the same subset or "crew" within the Sharkies, which had a reputation as the most feared, and fearless, killers in the city who sought to take control of the drug trade in Pomona.

Casillas did not testify, and the defense did not call any other witnesses. Casillas's trial counsel argued Casillas fired only in self-defense, or in defense of Montanez, after Doe 1 raised his firearm in the direction of Montanez or Casillas. The liquor store surveillance videos were played for the jury, and the relevant footage was available for the jury's review during their deliberations.

The jury convicted Casillas on counts 1 through 7 and found the firearm and gang allegations to be true. The court declared a mistrial as to count 8 due to jury deadlock.

The trial court sentenced Casillas to state prison for an aggregate term of 127 years to life. The sentence was comprised

of the following terms: on count 2, seven years (the upper term of three years, plus four years pursuant to section 186.22, subdivision (b)(1)(A)); on counts 3-5, consecutive life terms plus 25 years to life pursuant to section 12022.53, subdivisions (d) and (e)(1), plus a minimum parole eligibility period of 15 years pursuant to section 186.22, subdivision (b)(5); and on counts 6-8, concurrent upper terms of nine years, stayed pursuant to section 654, plus 10-year concurrent gang and firearm enhancements, stayed pursuant to section 654.

Casillas appealed.

## DISCUSSION

*A. Standard of Review*

In assessing whether jury instructions correctly state the law, we apply a de novo standard of review. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579; *People v. Posey* (2004) 32 Cal.4th 193, 218; accord, *People v. Morales* (2021) 69 Cal.App.5th 978, 990.) "'A court's discretionary decision to dismiss or strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 373; accord, *People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)

*B. The Jury Instruction on Justifiable Homicide Was Correct*

The trial court, with no objection from defense counsel, instructed the jury on the elements of perfect self-defense in accordance with CALCRIM No. 505.[5] The instruction stated, in pertinent part: "The defendant is not guilty of attempted

---

[5] The trial court and the parties augmented the pattern jury instruction slightly to reflect that the crimes at issue here were *attempted* murder and *attempted* manslaughter.

7

murder, attempted manslaughter, assault with a semiautomatic firearm, and shooting at an occupied building if he was justified in attempting to kill someone in self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if: [¶] 1. The defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury. [¶] 2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger. [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. . . . *Defendant's belief must have been reasonable and he must have acted only because of that belief. . . .*" (Italics added.)

Casillas asserts the requirements that a defendant's belief was reasonable, and he or she acted only because of that belief, only applies to claims of self-defense under section 197, subdivisions (2) and (3). Casillas argues the trial court's use of CALCRIM No. 505 thus improperly imposed the italicized limitations (found in section 198) on his claim of self-defense under section 197, subdivision (1). Casillas's argument is predicated on the interplay between sections 197 and 198.

Section 197 in relevant part provides: "Homicide is justifiable when committed by any person in any of the following cases: [¶] (1) When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person. [¶] (2) When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . . . [¶] (3) When committed in the lawful defense of such person . . . when there is a reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of

8

such design being accomplished; but such person, or the person in whose behalf the defense was made, if he or she was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed . . . ."

Section 198 provides: "A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone." Casillas argues the limitations of section 198 (i.e., that a defendant's fear was objectively reasonable, and he or she killed solely because of that fear), do not apply to a claim of felony-resistance self-defense under section 197, subdivision (1), because section 198 only refers to subdivisions (2) and (3). Casillas further asserts that "[f]or more than 140 years, a California defendant has been entitled to rely on self-defense or defense of another while resisting an actual attempt to kill or cause him great bodily injury *regardless* of whether there may have been other motives for his actions as well." Thus, according to Casillas, giving CALCRIM No. 505 here, in a purported section 197, subdivision (1) case, constituted constitutional error, and his convictions on counts 3 through 8 must be reversed. [6] We disagree.

---

[6] As a threshold matter, despite the People's assertion to the contrary, Casillas did not forfeit this argument by failing to raise it before the trial court. Generally, a party seeking additions to, or clarifications of, otherwise legally sound jury instructions, must first do so in the trial court, or forfeit the claim. (*People v.*

9

In *People v. Trevino*, the Court of Appeal rejected an attempt to parse the language of section 198 and apply its qualifications only to section 197, subdivisions (2) and (3). (*People v. Trevino* (1988) 200 Cal.App.3d 874, 878 (*Trevino*).) *Trevino* found the law "settled that '[t]o be exculpated on a theory of self-defense one must have an honest *and* reasonable belief in the need to defend. [Citations.] A bare fear is not enough; "the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone." (Pen. Code § 198.)' [Citations.] Hence, an instruction which states that the party killing must act under the influence of such fears alone, is a correct statement of the law.'" (*Id.* at pp. 878-879; accord, *People v. Vernon* (1925) 71 Cal.App. 628, 629 ["the use of the word 'alone' . . . limits the right to take the life of another in self-defense to cases where the act is done under the influence of fear of the danger designed. . . . [which is] a correct statement of the law, and conforms to the provisions of sections 197 and 198"].) *Trevino* explained "we do not mean to imply that a person who feels anger or even hatred toward the person killed, may never justifiably use deadly force in self-defense." (*Id.* at p. 879.) Indeed, "it would be unreasonable to require the absence of any feelings other than fear, before the homicide could be considered justifiable. . . . Instead, the law requires that the party killing *act* out of fear alone. . . . The party killing is not precluded from feeling anger or other emotions save and except for fear; however, those other

*Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) However, here, because Casillas argues the instruction was an incorrect statement of the applicable law, he may raise the issue for the first time on appeal. (*Id.* at p. 1012.)

10

emotions cannot be causal factors in his decision to use deadly force.  If they are, the homicide cannot be justified on a theory of self-defense.  But if the only causation of the killing was the reasonable fear that there was imminent danger of death or great bodily injury, then the use of deadly force in self-defense is proper, regardless of what other emotions the party who kills may have been feeling, but not acting upon." (*Ibid*.)

More recently, the California Supreme Court endorsed the holding in *Trevino* and its analysis of the statutory phrase "such fears alone." (See *People v. Nguyen* (2015) 61 Cal.4th 1015, 1045 (*Nguyen*) [citing section 197, subdivisions (1) and (2), along with section 198 in discussing the law of perfect self-defense].)[7]  The Supreme Court explained "*Trevino* clarified that this rule does not 'imply that a person who feels anger or even hatred toward the person killed, may never justifiably use deadly force in self-defense.'" (*Nguyen*, at p. 1045.)  Consistent with the Supreme Court's holding in *Nguyen*, we agree with *Trevino*'s summation of the law of perfect self-defense and reject Casillas's attempt to parse the language of section 198 to exempt certain claims of self-defense from its qualifications.

Casillas also argues the jury should have been instructed on perfect self-defense using only CALJIC No. 5.10,[8] which he asserts generally reflects the language of section 197, subdivision

---

[7]     Casillas did not address or attempt to distinguish either *Trevino, supra,* 200 Cal.App.3d at pp. 878-880 or *Nguyen, supra,* 61 Cal.4th at p. 1045 in his opening brief and did not file a reply brief.

[8]     CALJIC No. 5.10 provides:  "Homicide is justifiable and not unlawful when committed by any person who is resisting an attempt to commit a forcible and atrocious crime."

11

(1). However, the Court of Appeal in *People v. Barillas* (1996) 49 Cal.App.4th 1012, 1022-1023 referred to CALJIC No. 5.10 as mere "surplusage," which "added nothing to the other instructions, and should not have been given," where the jury received multiple self-defense instructions, including CALJIC No. 5.12 [Justifiable Homicide in Self-Defense], which we note expressly incorporates the limitations of section 198.[9] Perhaps unsurprisingly, there is no CALCRIM instruction analogous to the "surplusage" of CALJIC No. 5.10. Rather, CALCRIM No. 505 is the applicable, complete instruction for perfect self-defense and the trial court did not err in instructing the jury accordingly.

---

[9] CALJIC No. 5.12 provides: "The killing of another person in self-defense is justifiable and not unlawful when the person who does the killing actually and reasonably believes: [¶] 1. That there is imminent danger that the other person will either kill [him][her] or cause great bodily injury; and [¶] 2. That it is necessary under the circumstances for [him][her] to use in self-defense force or means that might cause the death of other person for the purpose of avoiding death or great bodily injury to [himself][herself]. [¶] A bare fear of death or great bodily injury is not sufficient to justify a homicide. To justify taking the life of another in self-defense, the circumstances must be such as would excite the fears of a reasonable person placed in a similar position, and the party killing must act under the influence of those fears alone. The danger must be apparent, present, immediate and instantly dealt with, or must so appear at the time to the slayer as a reasonable person, and the killing must be done under a well-founded belief that it is necessary to save one's self from death or great bodily harm."

Casillas relies on *People v. Morine*[10] (1882) 61 Cal. 367, 371 and *People v. Young* (1963) 214 Cal.App.2d 641, 644 for the proposition that "the jury need not make either of the inquiries required by section 198 . . . under section 197, subdivision 1." Casillas's reliance is misplaced. In *People v. Young*, the erroneously excluded jury instructions included the predecessor versions of both CALJIC 5.10 *and* 5.12, the latter of which incorporates the same limitations found in section 198, i.e., that one's fear must be reasonable and the sole motivation for killing. (*People v. Young*, *supra*, 214 Cal.App.2d at pp. 643-644, fn. 2.) Likewise, in *People v. Morine*, *supra*, 61 Cal. at p. 371, while the trial court instructed the jury using the language of section 197, subdivision (1), it also incorporated subdivision (3), and section 198. Thus, neither *Young* nor *Morine* stands for the proposition that a jury may properly be instructed on CALJIC 5.10 alone, divorced from the well-settled qualifications on perfect self-defense codified in section 198. And it is not definitive that CALJIC No. 5.10, standing alone, does not expressly include the section 198 qualifications contained in CALJIC Nos. 5.12 and 5.14, because as *Morine* notes when evaluating the accuracy of jury instructions, "'[w]e must take the charge together, and if without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations

---

[10] In his brief Casillas cites to *People v. Lewis* (1882) 61 Cal. 367, a case with the same reporter cite as *People v. Morine*. We assume Casillas intended to cite *Morine*, as *Lewis* does not address the issues relevant here.

which are to be gathered from the entire text.'" (61 Cal. at p. 370.)

Casillas further argues that when the trial court instructed the jury with CALCRIM No. 505 it constituted an ex post facto violation because the instruction retroactively abolished a defense that existed in 2012 when the events occurred in this case. Casillas's invocation of the ex post facto clause is inapposite here.

In order to establish perfect self-defense under California law "[i]t must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." (Stats. 1850, ch. 99, § 30, p. 232.) CALCRIM No. 505 did not operate to eliminate or augment any pre-existing defense but rather was an accurate statement of the law of self-defense as it exists now and when these events occurred in 2012.

### C. The Trial Court Was Not Required To Instruct on Principles of Aiding and Abetting

Casillas asserts the trial court was obligated sua sponte to give instructions on aiding and abetting liability after the prosecutor made certain comments in his closing argument and rebuttal, and the failure to do so amounted to reversible error. In his closing argument, the prosecutor argued self-defense was not applicable "given that [Casillas] and [Montanez] were the initial aggressors in this case." Casillas takes issue with the following excerpt from the prosecutor's rebuttal: "Defense counsel also argued that there's no evidence of a gun in [Montanez's] hand when the window goes down and when he opened the front passenger door. If that were the case, why does John Doe 2, the driver, flee towards the liquor store? What causes a man like

14

that to run for safety?  In this case there could only be one answer to that, and that is that the driver knew that there [were] impending gunshots coming, that he had to flee for his life because he probably was unarmed and did not have a gun on him.  When he sees Raymond Montanez begin to open that door, roll down that window, it's because Montanez, or Drunx, had a gun, and that [Casillas] was already out of the driver's seat walking around, and that the driver knew what was about to happen.  That is circumstantial evidence that [Montanez] had a gun and was initiating the gun battle."

Casillas contends the aiding and abetting instructions were necessary "after the prosecutor argued that [Casillas's] friend's conduct could cause him to lose his rights to perfect self-defense and defense of another."  Casillas claims without the benefit of instructions on aiding and abetting "the jury was simply left with the prosecutor's 'Well, his friend started it, so self-defense does not apply' argument."  Casillas insists "[t]he prosecutor's comments make clear that he sought to hold [*Casillas*] responsible for *Montanez*'s conduct under an accomplice theory of liability."  Casillas is incorrect.

When we review a claim of instructional error de novo, we "must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution." (*People v. Mitchell, supra,* 7 Cal.5th at p. 579.)  The instructional challenge "is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'" (*Ibid.*)  "'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on general principles of law relevant

15

to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189.)

"In particular, instructions delineating an aiding and abetting theory of liability must be given when such derivative culpability 'form[s] a part of the prosecution's theory of criminal liability and substantial evidence supports the theory.'" (*People v. Delgado* (2013) 56 Cal.4th 480, 488; see *People v. Prettyman* (1996) 14 Cal.4th 248, 259 ["[a]ccomplice liability is 'derivative,' that is, it results from an act by the perpetrator to which the accomplice contributed"].)  However, "the jury need not receive instructions on aiding and abetting when the prosecutor tries the case on the theory that the defendant was one of the direct perpetrators of the crime, neither side relies on an aiding and abetting theory, and no evidence is presented suggesting that the defendant acted merely as an aider and abettor of the crimes." (*People v. Whitmer* (2014) 230 Cal.App.4th 906, 926; see *People v. Young* (2005) 34 Cal.4th 1149, 1201 ["[i]nstructions on aiding and abetting are not required where '[t]he defendant was not tried as an aider and abettor, [and] there was no evidence to support such a theory"].)

Here, the prosecution's theory was that both Casillas and Montanez were working in concert as direct perpetrators: "What's also relevant here is that as [Montanez] exits the car, simultaneously [Casillas] also exits the driver's area.  You see, it's not that [Casillas] was in the driver's seat unaware of [Montanez's] intentions. . . . [Casillas] simultaneously, in tandem, working together, exited the driver's seat to walk around the car.

. . ., whether they said it verbally to one another, or understood it implicitly, that they were about to get into a gunfight. Watch as [Casillas] walks around the rear of his car and immediately opens fire." Casillas's actions showing his direct participation were captured on video: Casillas was the driver, he stopped the car rather than continuing to drive away and he fired his own weapon multiple times at the three Does before jumping back into the car and speeding away.

Casillas posits that "[t]he trial court's failure to provide CALCRIM No. 401 [Aiding and Abetting: Intended Crimes] allowed the jury to create its own homespun theory of accomplice liability." But, the jury was instructed on the principles and limitations of accomplice liability, albeit in relation to count 2, to prove that Casillas aided and abetted felonious criminal conduct by Montanez. Given that instruction, it is unreasonable to assume the jurors resorted to "homespun" principles of accomplice liability.

In any event, as discussed, the prosecutor had no reason to, and indeed did not, resort to arguing derivative accomplice liability because there was undisputed video evidence that Casillas was a direct, active participant in the crime. When Casillas backed his car out of the parking space at the liquor store, he could have simply driven away and not engaged the Does. Instead, as Casillas reversed, his passenger window lowered, and an exchange occurred with the Does. Casillas still had the option to drive away but he elected to stop and then park his car in a manner that blocked the Does's sedan. As the Does backed away, Casillas exited his car with a gun, quickly moved to the rear of his vehicle and began firing at the Does. (See *People v. Sassounian* (1986) 182 Cal.App.3d 361, 404 ["the record herein

reflects that the defendant was not tried as an aider and abettor, but as one of the direct and active participants in this crime"].)

The jury was fully informed and properly instructed regarding Casillas's self-defense theory; the jury rejected that theory, finding Casillas guilty of three counts of attempted, premediated, deliberate murder. The prosecutor's isolated comment that Montanez "initiat[ed] this gun battle," when elsewhere he specifically cast both Montanez and Casillas as active participants working together to engage the Does in a gun fight, could not reasonably have misled the jury into improperly convicting Casillas pursuant to accomplice liability. (See *People v. Sassounian, supra,* 182 Cal.App.3d at p. 404 ["the sole basis for the defendant's conviction was that he was the actual perpetrator of the offense, and that 'under no reasonable hypothesis' could the jury have been misled into convicting on an aiding and abetting theory"].) Accordingly, the court did not err in omitting instructions on aiding and abetting.[11]

> *D. Assembly Bill 333 Requires Reversal of the Gang Enhancements and Count 2 (Carrying a Loaded Firearm While an Active Gang Member)*

"Section 186.22 provides for enhanced punishment when a defendant is convicted of an enumerated felony committed 'for

---

[11] Additionally, Casillas asserts his convictions should be reversed because cumulative errors deprived him of a fair trial in contravention of his federal constitutional rights. As discussed, we have not found individual error at trial let alone cumulative error. (See *People v. Lopez* (2021) 73 Cal.App.5th 327, 375 ["[b]ecause we have found none of [appellant's] claimed errors to constitute individual errors, they cannot as a group constitute cumulative error"].)

18

the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1085; accord, *People v. Lopez, supra,* 73 Cal.App.5th at p. 344; § 186.22, subd. (b)(1).) One requisite element to establish such a gang enhancement is that the alleged gang has engaged in a "pattern of criminal gang activity," which, at the time of Casillas's trial, was defined as "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [enumerated] offenses, provided at least one of these offenses occurred after the effective date of this [Act] and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ." (Former § 186.22, subd. (e).) "The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses." (*People v. Valencia* (2021) 11 Cal.5th 818, 829.)

While Casillas's appeal was pending the Legislature enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 3) (AB 333), which "impose[d] new substantive and procedural requirements for gang allegations." (*People v. Sek* (2022) 74 Cal.App.5th 657, 665.) Effective January 1, 2022, AB 333 altered the requirements for proving a defendant is an active participant in a criminal street gang as defined by section 186.22, subdivision (a), and for proving gang enhancements pursuant to section 186.22, subdivision (b). Among other changes, AB 333 also amended the definition of "pattern of criminal gang activity" provided in section 186.22, subdivision (e), and modified the requisite proof of predicate offenses, including that the currently

19

charged offense may not be used to establish such a pattern and that the predicate offenses "commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational." (§ 186.22, subd. (e)(1), (2).) In addition, newly-added subdivision (g) of section 186.22 provides that the language to "benefit, promote, further, or assist" a criminal street gang "means to provide a common benefit" to members that is likewise "more than reputational." (§ 186.22, subd. (g) ["Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant"].) AB 333 also added section 1109, which requires, at a defendant's request, the trial court bifurcate the gang participation charges and enhancements from other counts that do not otherwise require gang evidence as an element of the crime.[12]

Casillas asserts, the People concede, and we agree that Casillas is entitled to the retroactive benefit of AB 333's amendments to section 186.22. (See *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*);[13] see also *People v. Rodriguez* (2022) 75

---

[12] In response to our request, the parties submitted supplemental briefs addressing what impact, if any, AB 333 has on Casillas's appeal.

[13] In *Estrada,* our Supreme Court explained that when the Legislature "amends a statute so as to lessen the punishment" it must have intended the new statute imposing the "lighter punishment" to "apply to every case to which it constitutionally could apply," i.e., "to acts committed before its passage provided the judgment convicting the defendant of the act is not final."

Cal.App.5th 816, 822-823; *People v. Delgado, supra,* 74 Cal.App.5th at p. 1087 ["we agree Assembly Bill 333's amendments to section 186.22 . . . apply retroactively"]; *People v. Lopez, supra,* 73 Cal.App.5th at p. 343 ["Assembly Bill 333 increases the threshold for conviction of the section 186.22 offense and the imposition of the enhancement . . . '[A] defendant is entitled to the benefit of an amendment to an enhancement statute, adding a new element to the enhancement, where the statutory change becomes effective while the case was on appeal, and the Legislature did not preclude its effect to pending case[s].'"])   The parties also agree that here, the evidence of predicate offenses introduced at Casillas's trial was insufficient under the new requirements prescribed by section 186.22 as revised, to prove a pattern of criminal gang activity.

Accordingly, the gang enhancement allegation findings under section 186.22 as to all counts are vacated.  Casillas's conviction on count 2 (carrying a firearm while an active gang member (§ 25850, subd. (a)) must also be reversed because subdivision (c) of section 25850 expressly incorporates

---

(*Estrada, supra,* 63 Cal.2d at p. 745; see *People v. Delgado, supra,* 74 Cal.App.5th at p. 1087 [explaining that "[i]n *Estrada,* the Supreme Court held that statutory amendments that reduce the punishment for an offense apply retroactively to a defendant who judgment is not yet final absent a contrary legislative intent"].)  The Supreme Court has since expanded the applicability of the doctrine enunciated in *Estrada* "broadly 'to statutes changing the law to the benefit of defendants.'"  (*People v. Sek, supra,* 74 Cal.App.5th at p. 666, quoting *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301.)  This presumption of retroactivity "applies to laws that change the substantive requirements for an enhancement in the defendant's favor."  (*Sek,* at p. 666.)

subdivision (a) of section 186.22.  (See *People v. Lopez, supra*, 73 Cal.App.5th at p. 373 ["Assembly Bill 333's changes to section 186.22 affect not only the gang enhancement allegations under that statute but other statutes that expressly incorporate provisions of section 186.22"].)

Because the gang enhancements are vacated, the firearm enhancements imposed as to counts 3, 4 and 5 under section 12022.53, subdivision (d), can also no longer stand.  The 25-year-to-life enhancements provided by section 12022.53, subdivision (d), require that the defendant "personally" discharge a firearm proximately causing great bodily injury, except where a gang enhancement has been pleaded and proved, pursuant to subdivision (e).  (See *People v. Lopez, supra*, 73 Cal.App.5th at pp. 374-375; § 12022.53, subd. (e)(1) ["[t]he enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22"]. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)"].)  Here, on the attempted murder counts the jury did not find that Casillas personally discharged a firearm causing great bodily injury, but rather that "a principal" did so.  Thus, the firearm enhancements under subdivision (d), were only proper if the gang enhancements were proven.  Given that the gang enhancements are now vacated, the firearm enhancements predicated thereupon must likewise be vacated.

Casillas also asserts that newly-added section 1109 is both retroactive and necessitates reversal of all counts, including his attempted murder and assault convictions, because the gang evidence "played a central role in undermining [Casillas's] claim

22

of self-defense." The People disagree, asserting that section 1109 is prospective, and regardless, any error was harmless because it is not reasonably probable a more favorable result would have occurred. Section 1109 provides that, at the request of the defendant, a gang enhancement allegation or gang-related crime be bifurcated from other charges. However, we need not decide the retroactive application of section 1109 because we find any such error in failing to bifurcate Casillas's trial was harmless. In this case, the gang evidence was inextricably linked with and relevant to the remaining charges of attempted murder and assault—in particular, this evidence was necessary to prove motive and intent. Casillas asserts that section 1109 "makes clear that gang evidence is no longer either relevant or admissible in the guilt phase of a criminal trial." We see no indication the Legislature intended that otherwise-relevant and admissible gang evidence would now be categorically barred from the guilt phase of all trials. (See generally *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049-1050 ["evidence of gang membership is often relevant to, and admissible regarding, the charged offense . . . [and] can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime"].)

Here, most of the gang evidence introduced at Casillas's trial would have been admissible regardless of bifurcation because the evidence was not only relevant, but integral, to proving motive and intent. Without such evidence the gun battle between Casillas and Montanez and three unidentified men in a liquor store parking lot would otherwise be inexplicable and nonsensical. Instead, the inclusion of evidence explaining Casillas's and Montanez's gang affiliation, their bitter rivalry

23

with a neighboring gang, the location of the liquor store on the borderline of the respective gangs' territories, the need to be "strapped" when entering rival gang territory, and the inevitability of rival gang encounters leading to shootings if anyone is indeed "strapped" collectively explained the motive behind the events that occurred in the parking lot. Casillas's counsel used this testimony in his closing argument to explain why, even though Casillas was armed, he was not precluded from claiming reasonable self-defense: "[Detective Bebon said a few things which I think are true and I think are relevant to your analysis. He said, being a gang member, or even a gang member associate, is dangerous. . . . He said the smart ones—remember, if you're slipping, you don't have a gun. The smart ones are always armed. That's not just 12th Street Sharkies, that's gang members. It's a dangerous world. He talked about how you're always on 24/7. You're always on offense and defense."

Casillas does not demonstrate how the inclusion of gang evidence introduced to meet the requirements of section 186.22, such as predicate offenses by other gang members, would have unduly prejudiced the jury. Even if the initial guilt phase of Casillas's trial was today, the vast majority of the gang evidence would be admissible. Casillas cannot therefore show it is "reasonably probable" that bifurcation would have resulted in a more favorable outcome. (See *People v. E.H.* (2022) 75 Cal.App.5th 467, 480.)

Accordingly, we reverse Casillas's conviction for carrying a loaded firearm while an active gang member (count 2)[14] and

---

[14] Effective January 1, 2022, the Legislature also enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3), which changed various sentencing laws, including section

24

vacate the gang enhancements on all counts and the firearm enhancements as to counts 3, 4 and 5.

We further agree with the People that the proper remedy is to remand and give the People the opportunity to retry the gang and firearm enhancements, as well as count 2, in accordance with AB 333's newly-enacted requirements. (*People v. E.H.*, *supra*, 75 Cal.App.5th at p. 480 ("[t]he proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges"]; see *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["[w]hen a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand. [Citation.] Such a retrial is not barred by the double jeopardy clause or ex post facto principles"]; see also *People v. Figueroa* (1993) 20 Cal.App.4th 65, 72 ["[w]here, as here, evidence is not introduced at trial because the law at the time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence"].)

We therefore remand to afford the People the opportunity to retry Casillas on count 2 and the gang and firearm enhancements. Should the People decline to do so, the trial court shall resentence Casillas in accordance with this opinion.

---

1170. We requested the parties provide supplemental briefing as to what impact, if any, these changes to section 1170 have on Casillas's sentence on count 2 (carrying a loaded firearm while an active gang member). The People assert, and Casillas concurs, that this issue is now moot given the People's concession that the finding of guilt on count 2 must be reversed. We agree.

*E. The Trial Court Erred in Sentencing Casillas*

We requested supplemental briefing as to whether the trial court erred in imposing both the firearm enhancement and the alternative penalty provision of section 186.22, subdivision (b)(5), as to counts 3 through 5, in light of section 12022.53, subdivision (e)(2), given that the jury's verdicts on the attempted murder counts found true only that "a *principal*, personally and intentionally discharged a firearm . . . which proximately caused great bodily injury," (italics added) rather than *Casillas* specifically.  In particular, section 12022.53, subdivision (e)(2), provides "[a]n enhancement for participation in a criminal street gang . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

Because the jury did not find that Casillas personally used or personally discharged a firearm proximately causing great bodily injury, the parties agree, and we concur, imposition of the alternative penalty provision pursuant to section 186.22, subdivision (b)(5), on the attempted murder counts was erroneous.  (See *People v. Brookfield* (2009) 47 Cal.4th 583, 593 ["[a] defendant who personally uses or discharges a firearm in the commission of a gang-related offense is subject to both the increased punishment provided for in section 186.22 and the increased punishment provided for in section 12022.53.  In contrast, when another principal in the offense uses or discharges a firearm but the defendant does not, there is no imposition of an 'enhancement for participation in a criminal street gang . . . in addition to an enhancement imposed pursuant to' section 12022.53"], quoting § 12022.53 (e)(2).)  The trial court's

imposition of the 15-year minimum parole eligibility period as to counts 3 through 5 is stricken.

### F. Casillas's Additional Sentencing Challenges Are Moot

Casillas further argues the trial court abused its discretion by refusing to strike the firearm enhancements at sentencing, resulting in an aggregate sentence violative of the Eighth and Fourteenth Amendments of the U.S. Constitution. Casillas also asserts his 127 years-to-life sentence constitutes cruel and unusual punishment under the Eighth Amendment, because he had only one prior conviction for a traffic offense and his conduct at issue "occurred immediately after a man pulled a gun on him and his companion." Because we reverse Casillas's conviction on count 2, as well as the gang and firearm enhancements, and permit his retrial and mandate resentencing regardless, these issues related to his original sentence are now moot.

## DISPOSITION

We affirm Casillas's convictions for attempted deliberate, willful and premeditated murder (counts 3, 4 and 5) and aggravated assault (counts 6, 7 and 8) and reverse his conviction for carrying a loaded firearm while an active street gang member (count 2). We vacate the gang enhancement findings made under section 186.22, subdivision (b), as to counts 3, 4, 5, 6, 7 and 8. We also vacate the firearm enhancement findings made under section 12022.53, subdivisions (d) and (e)(1), as to counts 3, 4 and 5. We reverse Casillas's conviction as to count 2. Finally, we strike the 15-year minimum parole eligibility period imposed under section 186.22, subdivision (b)(5).

We remand this matter to the trial court to afford the People an opportunity to retry count 2, the gang enhancements for counts 3, 4, 5, 6, 7 and 8 and the firearm enhancements for counts 3, 4 and 5. If the People elect not to retry Casillas, then the court shall resentence Casillas in a manner consistent with this opinion.


WISE, J.[*]


We concur:



PERLUSS, P. J.　　　　　FEUER, J.

_____

[*]　Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.